# Richmond

## WINSTON AND OTHERS V. GORDON AND OTHERS.

### January 15, 1914.

1. CORPORATIONS—*Deed by Directors—Ratification—Case in Judgment.*
   —Although a bank is hopelessly insolvent, directors have not
   power to execute a general deed of assignment of all its prop-
   erty for the equal benefit of all of its creditors. Such a deed
   can only be lawfully executed by the stockholders. If executed
   by the directors, however, though in excess of their authority,
   it is not wholly void, but is capable of being rendered valid by
   ratification or acquiescence, and, in the case in judgment, the
   whole course of dealing bearing upon the subject and the con-
   duct of the litigation shows that the deed executed by the direc-
   tors has been ratified and acquiesced in by the stockholders and
   the conduct of directors has been such as to estop them to
   deny its due execution.

2. PRINCIPAL AND AGENT—*Unauthorized Act of Agent—Ratification—*
   *Slight Evidence.*—An act of an agent from which he derives no
   personal benefit, but which is done in good faith for the benefit
   of his principal, and which was apparently necessary and would
   redound to his benefit, will be held to have been ratified and
   acquiesced in, and be thereby rendered valid upon slight evi-
   dence. If a principal knows that an agent has transcended his
   authority, he must promptly disavow the act, or he makes it
   his own. This doctrine of the ratification of the acts of agents
   is as applicable to corporations as to other principals.

3. LIMITATION OF ACTIONS—*Banks—Negligent Bank Directors May*
   *Plead—Trusts.*—Directors of a bank, which is a going concern,
   are not trustees of an express trust, with respect to the property
   or funds of the bank, but of an implied or resulting trust created
   by operation of the law upon their official relation to the bank,
   and the statute of limitations and the doctrine of laches may
   be invoked in their defense when sued for a breach of such
   trust.

4. LIMITATION OF ACTIONS—*Bank Directors—Statute Applicable—When*
   *Right of Action Accrues.*—The cause of action against the di-
   rectors of a bank for neglect of duty as such directors does not

grow out of contract but out of their breach of duty, and hence the statute of limitations of three years does not apply, but the wrongs which constitute the cause of action are damages to property revivable upon the death of either party, and the limitation applicable thereto is five years, as provided by section 2927 of the Code. Where fraud is neither alleged nor proved, and no concealment of liability on the part of the defendants is shown, the act of limitations begins to run from the time the alleged wrongs, if any, were committed.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. · Decree for the defendants. Complainants appeal.

*Reversed.*

The opinion states the case.

*C. J. Collins, Williams, Tunstall & Thom, Jeffries, Wolcott, Wolcott & Lankford,* for the appellants.

*Walter H. Taylor, N. T. Green, James E. Heath, O. L. Shackelford, James G. Martin, Thos. H. Willcox,* and *Tazewell Taylor,* for the appellees.

KEITH, P., delivered the opinion of the court.

The Traders and Truckers Bank of the city of Norfolk closed its doors on the 7th of August, 1909. On August 9 the board of directors passed a resolution, in pursuance of which the bank executed a deed of assignment of all its assets to James H. Winston. On August 11 Winston filed his bill in the court of law and chancery of the city of Norfolk, asking the guidance of the court in the administration of his trust. A few days thereafter, upon the petition of Winston, T. F. Tilghman and B. A. Banks were associated with him as co-trustees. On October 3, 1910, the trustees filed a petition in this suit for the administration of the trust under the guidance of the

court, praying permission to bring suit against the directors, and on the same day a decree was entered authorizing and directing the trustees to bring suit against the directors for their misconduct and neglect in the administration of the affairs of the bank; and on October 4, 1910, the suit against the directors was entered.

Without going into minute details of the many delinquencies charged against the directors who were made parties defendant, it will suffice to say that it is alleged that they carelessly and negligently disregarded their duties as directors; that loans had been recklessly and improvidently made to insolvent corporations, firms and individuals; and that divers persons had been allowed to overdraw their accounts; and that by reason of these acts of omission and commission great loss had been inflicted upon the depositors.

By decree entered on the 8th of November, 1911, the plaintiffs were allowed to file an amended and supplemental bill. By leave of court, on the 2d of January, 1912, a second amended and supplemental bill was filed; but the amendments made in the two amended bills, in the view that we take of the case, need not be specifically considered. It is sufficient to say that both bills were demurred to, and that the demurrers were properly overruled.

To each of the bills, original and amended, the parties defendant filed pleas of the statute of limitations, alleging that the cause of action against them, if any existed, did not arise within one year, within two years, or within three years, prior to the institution of the suit or filing of the particular bill to which the plea was addressed. They also filed, by leave of court, a plea to the second amended and supplemental bill as follows:

"That the supposed deed of assignment from Traders and Truckers Bank to James H. Winston, trustee, averred

in said bill and called Exhibit 'A' with said bill, is not the act nor deed of said Traders and Truckers Bank, and said Traders and Truckers Bank did not make said deed described as Exhibit 'A' with said bill, and said Traders and Truckers Bank did not authorize the making of said supposed deed mentioned as Exhibit 'A' with said bill."

Upon this plea of *non est factum,* as it may be called, issue was joined, and a jury was empaneled to try the same, in which Winston and others, trustees, were plaintiffs, and one Charles J. Calrow was the particular defendant.

In the progress of the trial the court instructed the jury as follows: "If the jury believe from the evidence that the deed of assignment to Winston was made without the authority of a stockholders' meeting they must find for the defendant."

To the giving of this instruction the plaintiffs objected; their objection was overruled and an exception taken. There was evidence before the jury that the execution of the deed was authorized at a meeting of the board of directors. There was no evidence, however, of a meeting of the stockholders. The jury found a verdict for the defendant, which the court refused to set aside, and certified the verdict to the chancery side of the court, and on the 1st day of May, 1912, entered a decree that "the court being of opinion that on the findings of the jury upon the trial on the law side of this court in this cause of said issue, that the said deed of assignment is invalid and void as to the said Charles J. Calrow, doth overrule said motion for a new trial, and . . . . it is adjudged, ordered and decreed that the said bill of the said plaintiffs as to the said Charles J. Calrow be, and the same is hereby dismissed, and that the said Charles J. Calrow recover his reasonable costs in this behalf expended."

The other defendants, who were situated similarly to Charles J. Calrow, moved the court "that inasmuch as it

appears from the verdict of the jury aforesaid that the deed under which the complainants herein claim is not the deed of the defendant, the Traders and Truckers Bank, this suit be dismissed as to them also"; but the court refused to dismiss the suit as to the defendants other than Charles J. Calrow.

At this stage of the proceedings the plaintiffs asked and obtained leave to file a third amended and supplemental bill, to which the defendants demurred, and their demurrer was sustained, the court being of opinion that the board of directors of the insolvent Traders and Truckers Bank could not make a valid general assignment for the benefit of its creditors without the consent of its stockholders; and thereupon a decree was entered for costs and the cause removed from the docket.

The object of the third amended and supplemental bill is to show that the Traders and Truckers Bank and all concerned in or connected with it, including the defendants, have so acted with reference to the assignment of the property and assets of the bank to Winston, trustee, for the benefit of its creditors, and to the litigation which has followed and grown out of that assignment as to give validity and effect to the assignment by ratification, acquiescence in and conduct with respect thereto, by which they are now estopped to deny the due execution of the deed. From its recital of facts, which are in the main established by the record, it appears that the deed was made on the 9th day of August, 1909; that Winston filed a bill in chancery asking the aid of the court in the administration of the trust on the 11th day of August of that year; that the bill in the original suit was taken for confessed as to the bank, and that it, therefore, stands admitted, so far as the bank is concerned; that the deed of trust was duly and properly made, and is a valid conveyance of its assets; that in obedience to a decree in the original suit the

present suit against the directors was instituted; that at the March rules, 1910, certain creditors and depositors of the Traders and Truckers Bank, suing on behalf of themselves and all other creditors of said bank, filed a bill in which the Traders and Truckers Bank and the several persons who were made defendants to the suit now before the court were made co-defendants, and in which a decree was asked against them for the same relief and based substantially upon the same causes of action as those set out in the several bills now before the court, in which bill it is alleged as follows:

"On August 9, 1909, the said bank having been hopelessly insolvent for a long time, its directors met and passed a resolution which reads as follows:

" 'Resolved, That a deed of assignment be made naming James H. Winston as trustee, and that he make a statement of the bank's condition to the public.'

"Pursuant to said resolution a deed of assignment was made to the said James H. Winston, trustee, in which all of the property and assets of the said Traders and Truckers Bank were conveyed to him, with power to convert the same into money and apply the proceeds to the payment of the indebtedness of said bank. A copy of said deed of assignment is herewith filed, marked Exhibit A, and the same is asked to be read as a part of this bill."

It further appears from the bill that the deed of assignment referred to as Exhibit A is the same Exhibit A as has been hereinbefore mentioned in this suit.

To this bill the several defendants filed their separate demurrers, each of which is based upon the ground, among others, that the bill shows that even if there were any right to bring the suit such right would be in James H. Winston, trustee, or in James H. Winston, B. A. Banks and T. F. Tilghman, trustees, and not in complainants; and that said bill does not show any excuse for suit being brought by complainants instead of by said trustees.

Accordingly, the court of law and chancery of the city of Norfolk, on the 19th day of December, 1910, entered a decree upon that bill in the words following, to-wit:

"This cause came on this day to be again heard upon the papers formerly read, and upon motion of the defendants, who had filed demurrers in this cause, a reargument of said demurrers was had, argument being made by counsel for demurrants and for the plaintiffs.

"On consideration whereof; the court being of opinion that said demurrers should have been sustained and being of opinion that the bill shows that the plaintiffs, depositors in the Traders and Truckers Bank, had no right nor power themselves to bring this suit, the court doth adjudge, order and decree that said demurrer be sustained and that said bill be dismissed."

It appears that from that decree an appeal was taken, upon which a decree was rendered by the Supreme Court of Appeals at its June term, 1912 (*Murrell* v. *Traders and Truckers Bank,* 113 Va. 665, 75 S. E. 97), in which the decree of the court of law and chancery was affirmed.

The third amended bill further recites that, even after the institution of this suit, in which the pleas of the defendants were filed, the defendants answered the several bills, in which they failed to disclose or make known in any way the defense which they now set up by plea, and permitted decrees to be entered and the cause to be conducted as if this defense was not relied upon.

We have before us, then, a case in which the directors of a hopelessly insolvent bank, for the protection of the interests of all concerned, made a general deed of assignment of all its property for the equal benefit of all its creditors. It may be conceded at the outset that such a deed can only lawfully be executed by the stockholders; but the contention is that the act of the directors, while in excess of their authority, was not wholly void, but

was capable of being rendered valid by ratification or acquiescence.

In *Peters* v. *Waverly, &c., Co.,* 113 Va. 318, 74 S. E. 168, this court said: "Although the action of the board of directors of a corporation, in selling and disposing of the entire property of the corporation, may have been in excess of their authority, nevertheless, if it was within the charter powers of the corporation itself, the action of the board is not void, but voidable only, and may be ratified by a majority of the stockholders."

That the proper execution of a deed such as that in question was within the charter powers of the Traders and Truckers Bank is nowhere questioned. The whole contention is that it was within the competency of the stockholders, but was beyond the power of the directors.

In Morawetz on Private Corporations, section 623, it is said: "If the shareholders, who constitute the corporate association, unanimously acquiesce in or ratify an act performed by an agent or board on behalf of the corporation, no further question as to the extent of the powers delegated to the agent or board can arise. Ratification by all the shareholders would not cure the illegality of an act which is prohibited by the common law or by statute; but it would remove any defect of authority in the agent performing the act, as between himself and the company. After such ratification, the company would become chargeable with the act, to the same extent as if it had originally authorized it to be done."

In section 619 of the same work the distinction is again drawn between such acts as are in violation of the company's charter, and therefore outside of the powers delegated to any of its agents, and such acts are as merely in excesss of the powers delegated to inferior agents by those who have appointed them, but are within the powers of the appointing agents.

In *Keisey* v. *National Bank,* 69 Pa. St. 426, it is said: "The law is well settled that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own; and the maxim which makes ratification equivalent to a precedent authority is as much predicable of ratification by a corporation as it is of ratification by any other principal, and it is equally to be presumed from the absence of dissent."

And in 2 Kent's Com. 616, the law is thus stated: "It is a very clear and salutary rule in relation to agencies that where the principal, with knowledge of all the facts, adopts or acquiesces in the acts done under an assumed agency, he cannot be heard afterwards to impeach them under pretense that they were done without authority, or even contrary to authority."

It is well settled, and is agreeable to reason, that an act of an agent, from which the agent derives no personal benefit, but which is done in good faith for the benefit of his principal, and which was apparently necessary and would redound to his advantage, will be held to have been ratified or acquiesced in, and be thereby rendered valid upon slight evidence. If the principal knows that an agent has transcended his authority, he must promptly disavow the act, or he makes it his own. *Kelsey* v. *National Bank, supra.*

In *Sherman* v. *Fitch,* 98 Mass., at p. 64, the court said, speaking of the authority of an agent to execute a mortgage on behalf of a corporation: "It is not necessary that the authority should be given by a formal vote. Such an act by the president and general manager of the business of the corporation, with the knowledge and concurrence of the directors, or with their subsequent and long continued acquiescence, may properly be regarded as the act of the corporation. Authority in the agent of a corporation may

be inferred from the conduct of its officers, or from their knowledge and neglect to make objection, as well as in the case of individuals."

In *Fort Worth Publishing Co.* v. *Hitson et al.,* 80 Texas, 216, 14 S. W. 843, 16 S. W. 551, a private corporation was largely indebted and was considered insolvent. A new corporation was formed by practically the same men. The new corporation assumed the indebtedness of the first; the stock of the old was transferred to the new company. The property itself was delivered by the manager to the new company with the knowledge and consent of the stockholders of the first, but without any action by the board of directors. The property having been seized by creditors of the new corporation, it was claimed by the first. *Held:* The facts showing the dealings of the two corporations, their directors and stockholders, were relevant, and that the facts were evidence of ownership by the defendant. And the court said: "We can see no good reason why a corporation may not be bound by acts of acquiescence in a transaction which may be irregular on its face if not prohibited, or which may be in excess of the officer's power acting for the corporation."

In *Sheldon Hat Co.* v. *Eickemeyer Hat, &c., Co.,* 90 N. Y. 607, the court holds that "the doctrine of equitable estoppel, which prevents a principal from questioning an act of his agent done in his business, but not within the scope of the agent's authority, where the principal has not disaffirmed the act within a reasonable time after it came to his knowledge, applies to members of a corporate body as well as to persons acting in a private capacity."

In *Edelhoff* v. *Horner, &c., Co.,* 86 Md. 595, 39 Atl. Rep. 314, the court of appeals of Maryland decided that "when a mortgage of the chattels of a corporation is made by its officers, without authority, to secure funds to pay its debts and continue the business, and it receives the full benefit

of the transaction, without objection, it will be presumed to have authorized or ratified the mortgage."

In the case of *Young* v. *Improvement Co.,* 48 W. Va. 512, 38 S. E. 670, the Improvement Loan and Building Association became insolvent and executed a deed of assignment of all its assets to Young and another, as trustees, and the trustees filed their bill against the Improvement and Loan Association, its stockholders, the Middlesex Knitting Company and other creditors, praying the aid and guidance of the court in the administration of the trust. The court rendered several decrees in the case, from all of which the Kilbourne Knitting Machine Company took an appeal. The court held that, by allowing the case to go on through many steps without any objection to the validity of the assignment on the ground that the board of directors caused it to be executed by the president without the authority of the stockholders, the appellants were estopped from making this defense; and in the course of the opinion the court said: "Suppose, however, that the appellants were not precluded by the bill taken for confessed against them, and the decrees thereon fixing the rights of the parties; still, they would be debarred from upheaving things as they propose, because of their laches in assaulting the deed on this merely technical point—merely technical when everybody admits that the association was wholly insolvent, unable to go on, and that the assignment was only what the stockholders surely would have done, or a court of equity would have done through a receiver. Not only would they be debarred by laches, but the appellants would be also thus debarred by their acts of recognition and ratification of that assignment. The deed of assignment was made September 24, 1897. Active steps were taken by the trustees by the institution of the suit to wind up in November, 1897. In February, 1898, on the bill taken for confessed, the case was referred to a com-

missioner to report the assets, debts and stockholders, and the amount paid by the stockholders. The commissioner reported these things, and on May 28, 1898, a decree was made confirming the report, and another reference was made to the commissioner to settle the accounts of each stockholder with the association and with other stockholders, and to report a scheme by which stockholders could be made equal in the distribution of the assets. Upon the second report a decree of confirmation was entered, settling the rights of all the parties, in October, 1898. In February, 1899, for the first time, the knitting companies sought to raise this question of the validity of the assignment. Before that they had paid on their debts and stock, after that assignment, large amounts of money to the trustees under the assignment, thus recognizing and ratifying that assignment in a solemn manner. . . . If these knitting companies had anything to say against that assignment, which was an absolute necessity and such as a court would have authorized, why did they not answer the bill, which predicated relief on that assignment as valid? Why let the proceedings go on, before commissioner and court, for fourteen months, and decrees and orders entered on the basis of that assignment, without whispering a whisper of its technical invalidity? This acquiescence, failure to speak out in solemn legal proceedings when called upon to speak, . . . bars the knitting companies from setting up the invalidity of the assignment."

The deed under consideration was executed on the 9th of August. The original bill asking the guidance of the court was filed on the 11th of August. In October, 1910, the suit against the directors was entered, and in November, 1911, a supplemental bill was filed. On the 17th of January, 1912, the second amended and supplemental bill was filed. All these bills were answered by the defend-

ants; numerous pleas of the statutes of limitations were taken, and while it is true that in the answers proof of all the allegations, of the several bills is called for, nevertheless, until the filing of plea No. 10, known as the plea of *non est factum,* it was never suggested that the deed to Winston of August 9 was invalid because not authorized to be made at a meeting of the stockholders of the bank. These bills were taken for confessed as to the Traders and Truckers Bank, and no stockholder has in that capacity entered one word of objection to what has been done.

In the suit of *Murrell* v. *Bank,* 113 Va. 665, 75 S. E. 97, already referred to, certain creditors brought suit against these directors upon the same cause of action now in litigation. Numerous causes of demurrer were assigned, but there is no hint in any of them of the invalidity of the deed to Winston, and the demurrers were ultimately sustained upon appeal to this court upon the ground that the right of action was not in the creditors, but in the trustees; or rather, that there was no right of action in the creditors until the trustees had been requested to bring suit and had refused to do so.

We do not think that section 1105-a, sub-section 11, or section 1105-e, sub-section 30, were intended to cover a case such as this, but were designed to provide a means by which the voluntary dissolution and destruction of a corporation might be accomplished.

Upon this branch of the case we are of opinion that the whole course of dealing bearing upon the subject and the conduct of the litigation show that the deed to Winston, trustee, of August 9, 1909, had been ratified and acquiesced in by the stockholders, and that the conduct of the defendants had been such as to estop them to deny its due execution.

This brings us to the consideration of the statutes of limitation of one, two and three years, pleaded in this

case. The court of law and chancery rejected the pleas of one and two years, and sustained the plea of three years' limitation, and this action is assigned as error by the appellants, who insist that the directors of a bank are trustees, and that there is no statutory bar to a suit against them for misconduct in the execution of their trust.

There are doubtless many cases in which directors are spoken of as trustees, and in a general sense they are trustees, but they are to be more accurately described as agents without compensation, who are responsible for the exercise of reasonable care in the performance of their duties.

In Words and Phrases, volume 8, at page 7822, it is said: "Directors of a bank are, in a certain sense, undoubtedly to be considered trustees, but only in that sense in which an agent or bailee intrusted with the care and management of property is considered a trustee. A director more nearly resembles a managing partner."

In 1 Morawetz on Private Corporations, at section 552, it is said: "Attempts have been made to define the degree of care and prudence which directors must exercise in the performance of their duties. In some of the cases it has been said that, inasmuch as directors are usually not paid for their services, they are to be regarded as mandataries —persons who have gratuitously undertaken to perform certain duties, and are bound to exercise only ordinary care and prudence. . . . But all this is at the best misleading. The plain and obvious rule is that directors impliedly undertake to use as much diligence and care as the proper performance of the duties of their office require. What constitutes a proper performance of the duties of a director is a question of fact, which must be determined in each case in view of all the circumstances— the character of the company, the condition of its business, the usual methods of managing such companies, and all other relevant facts must be taken into consideration."

It seems that so long as a corporation is a going concern, neither it nor its governing body holds the corporate property in trust for its creditors.

It was held in *Boyd* v. *Mutual Fire Association,* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171, 61 L. R. A. 918, 96 Am. St. Rep. 948, that "so long as a corporation is a going concern, neither it nor its governing body holds the corporate property in trust for its creditors. The officers and directors of a corporation occupy a fiduciary relation, demanding care, vigilance and good faith, and if they are guilty of misfeasanec or malfeasance, the corporation may at once bring an action at law to enforce any such violations of duty. In such case, if the corporation refuses to act, its stockholders, before insolvency, and its creditors, after insolvency, may enforce such liability in the right of the corporation, and the fact that the creditor must sue in equity does not alter the running of the statute of limitations, since the application of the statute of limitations in equity is determined by the cause of action stated rather than by the nature of the relief demanded.

In *Cooper* v. *Hill,* 94 Fed. 582, 36 C. C. A. 402, the subject was fully considered and numerous authorities cited, and the court held: "The directors of a national bank are not trustees of an express trust with respect to the property or funds of the bank, but of an implied or resulting trust created by the operation of the law upon their official relation to the bank, and the statute of limitations and the doctrine of laches may be invoked in their defense when sued for a breach of such trust. Such an action is maintainable either at law or in equity, and a court of equity will follow the statute of limitations, unless unusual or extraordinary circumstances render its application inequitable in a particular case."

58

In *Hughes* v. *Brown,* 88 Tenn. 578, 13 S. W. 286, 8 L. R. A. 480, the court, speaking through Mr. Justice Lurton, now of the supreme court, said: "Excepting alone suits between trustee and *cestui que trust* upon causes of action arising out of express trusts and cognizable alone in courts of equity, our general statutes of limitation apply to every cause or form of action, whether cognizable exclusively in courts of law, or concurrently in courts of law and equity, or exclusively in courts of equity."

In *Redford* v. *Clarke,* 100 Va. 115, 40 S. E. 630, this court said that "as a general rule the act of limitations does not run as between trustee and *cestui que trust* in express trusts, but the rule is otherwise as to constructive trusts. In respect to the statute of limitations, equity follows the law, and a demand that would be barred if asserted in a legal forum will be equally barred in equity."

We conclude, therefore, that the directors may rely upon the statute of limitations, and that the contention of appellants in this respect cannot be maintained.

The question then arises, What statute of limitations applies?

Section 2920 of the Code provides that "every action to recover money which is founded upon an award, or on any contract other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the same shall have first accrued; that is to say, if the case be upon . . . a bond of an executor . . . or any other fiduciary or public officer, or upon any other contract by writing under seal, within ten years; if it be upon an award, or be upon a contract by writing signed by the party to be charged thereby, or by his agent, but not under seal, within five years; if it be upon any oral contract, express or implied, for articles charged in a store account, although such articles be sold on a written order, within two years; and if it be upon any

other contract, within three years," with certain exceptions which need not here be noted.

It would seem, therefore, that the three years' statute under section 2920 applies only to suits arising upon contracts, while the suit before us grows out of a breach of duty. If the plaintiff had seen fit to sue at law rather than in equity, the suit would have been an action of tort sounding in damages. We are of opinion, therefore, that the court erred in holding that the three years' statute applied.

It is still more certain that the two years' statute has no application to this case. There remains, then, but to consider whether the statute of one year or of five years is applicable.

In section 2927 it is provided that "every personal action for which no limitation is otherwise prescribed shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued."

Prof. Graves, dealing with this subject, and more particularly with respect to the right of assignees of actions for torts, says "that actions *ex delicto* (torts) are frequently assignable in equity, there can be no doubt; and at law the assignee can sue in the name of the assignor, as was done on the assignment of a bond. But all actions *ex delicto* are not assignable, even in equity, for it is sometimes considered against public policy, even in our day, to allow such an action to be made over to an assignee for money. Then what tort actions are assignable? The answer is such only as survive to or against the personal representative, if one of the original parties dies. Then what tort actions survive? The anwer is: Those for wrong to property, real or personal, or which grow out of breach

of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract. An action for breach of promise of marriage does not survive at common law, nor under the Virginia statute." Graves on Pleading, page 16.

In Burks on Pleading and Practice, section 220, referring to section 2927 of the Code, it is said: "Whether the limitation to be applied in a particular case is a tort or contract limitation, where either may be brought, is determined by the object of the action and not simply by its form. If the injury sought to be redressed is merely personal, whether resulting from breach of contract or from tort, the action dies with the person and the tort limitation applies." Citing *Grubb* v. *Sult,* 32 Gratt. 203, 34 Am. Rep. 765; *Birmingham* v. *C. & O.,* 98 Va. 548, 37 S. E. 17.

In *Mumpower* v. *City of Bristol,* 94 Va. 737, 27 S. E. 581, an action was brought for maliciously and without probable cause suing out an injunction against the plaintiff, whereby the operation of his mill was suspended, and it was held that it was barred after one year from the dissolution of the injunction. The court considered the effect of section 2655 of the Code, which is as follows: "An action of trespass, or trespass on the case, may be maintained by a personal representative for the taking or carrying away of any goods, or for the waste or destruction of, or damage to, any estate of or by his decedent." The court said: "It is quite obvious that this injunction did not operate to take or carry away the goods of the plaintiff, nor cause the waste or destruction of, or inflict any damage upon the estate of the plaintiff. It is true that the language of the statute is comprehensive and embraces damage of any kind or degree to the estate, real or personal, of the person aggrieved; but the damage must be direct and not the consequential injury or loss to the estate which flows from a wrongful act directly affecting the person

only. No part of the defendant's property was taken or carried away; no part of it was wasted or destroyed."

As we have already said, there is no circumstance or element of injury to the person in this case. The wrong, if any, was to rights of property which, if the facts alleged in the bill are true, was of a serious and grievous nature.

In White & Tudor's Leading Cases in Equity, vol. 2, pt. 2, page 1624, note to *Ryall* v: *Rowles,* dealing with the subject of equitable assignments, the authors say: "To bring a cause of action within the scope of this doctrine, it must result from an injury to an existing right of property or from the breach of a contract which would have conferred such a right if it had been fulfilled, and the right to compensation in damages for injuries which are merely personal, as affecting the sufferer in mind, body or reputation, cannot be assigned in equity or at law."

The statement of Mr. Graves must always be borne in mind that actions are assignable which survive, and that those which do not survive are not assignable.

At page 1626 of White & Tudor's Leading Cases in Equity, *supra,* it is said: "All choses in action embracing demands which are considered as matters of property or estate are now assignable either at law or in equity. Nothing is excluded but mere personal torts, which die with the party. A claim, therefore, for property fraudulently or tortiously taken or received, or wrongfully withheld, and even for an injury to either real or personal property, may be assigned. The principle is the same where property is lost or injured through the negligence of an agent, bailee or common carrier, and hence the transfer of such a cause of action will confer an equitable right on the assignee."

In New York the statute, which in a general way corresponds with section 2655 of our Code, preserves from abatement by death actions "for wrongs done to the property, rights or interests of another." In *Cregin* v. *Brook-*

*lyn Crosstown R. Co.,* 75 N. Y. 192, 31 Am. Rep. 459, the action was brought by the husband against a carrier of passengers to recover for the loss of services of his wife and for expenses paid in consequence of injuries to her person resulting from the defendant's negligence while she was a passenger, and it was held that the action did not abate upon the death of the plaintiff, but might be revived in the name of his personal representatives. In the course of its opinion the court said: The husband "had a right to the services of his wife; they were of pecuniary value to him, and any wrong by which he was deprived of these services or put to expense to remedy or palliate the consequences of the injury to his wife was a wrong done to his rights and interests. Adopting the construction that pecuniary rights and interests only are protected by the statute, these were plainly involved, . . ." and it was held that the action survived.

In *Lee's Admr.* v. *Hill,* 87 Va. 497, 12 S. E. 1052, 24 Am. St. Rep. 666, this court said "that where a cause of action is founded in tort, unconnected with contract, and affects the person only, and not the estate, the action dies with the person; but where the action is founded on contract, although nominally laid in tort, the action survives." In a note to that case in 24 Am. St. Rep., at page 672, it is said that "actions founded on contract, where there is some wrong to the property, rights or interests of another, survive the death of the wrong-doer, but the action will not survive when such injuries are personal in their nature."

In 1 Cyc., page 49, the law upon the subject is well summarized as follows: "At common law, as a general rule, the qualities of assignability and survival are tests each of the other and are convertible terms. The question whether an action survives depends upon the nature of the action and not upon the form of it. It has been held that the line of demarcation at common law, separating

those actions which survive from those which do not, is that in the first the wrong complained of affects primarily and principally property and property rights, and the injuries to the person are merely incidental, while in the latter the injury complained of is to the person, and the property and rights of property affected are merely incidental. At common law the rule was a general one that actions *ex contractu* survived the death of a party to the action, but where the damage resulting was to the person the rule was otherwise."

It was very earnestly contended, on behalf of the appellants, that whatever limitation might be determined upon would begin to run only from the time that appellants had knowledge of the facts upon which the cause of action arose.

Speaking of section 2927, Burks on Pleading and Practice, page 385, says: "This section seems broad enough to cover actions for fraud. The main question of difficulty is whether the statute begins to run from the commission of the fraud or from its discovery. It has been held in Virginia that no lapse of time and no delay in bringing a suit, however long, will defeat the remedy in case of fraud or mutual mistake, provided the injured party, during such interval, was ignorant of the fraud or mistake. But the case in which this language is used (*Crauford* v. *Smith,* 93 Va. 623, 23 S. E. 235, 25 S. E. 637) was one of mistake and not of intentional fraud, and the suit was in equity and not at law. At law the statute probably runs from the commission of the fraud. In West Virginia it is said (*Thompson* v. *Whittaker Iron Co.,* 41 W. Va. 754, 23 S. E. 795) that where a cause of action arises out of a fraud the statute of limitations runs from its perpetration, and that to deduct the period during which a party is ignorant of the fraud, his ignorance must arise out of some positive act on the part of the defendant. Mere silence is not suffi-

cient, but there must be some act designed to conceal the existence of liability and operate in some way upon the plaintiff to prevent or delay suit for it, otherwise it will not come within the saving clause of the statute directed against obstructing the prosecution of a right by any other indirect ways or means."

In this case there is neither proof nor averment of fraud, nor of any act done designed to conceal the existence of liability, or which operated in any way upon the plaintiffs to prevent or delay the bringing of suit. We think, therefore, that the circuit court was right in saying that the statute of limitations began to run from the time the alleged wrongs, if any, were committed, but that the statute of five years, and not of three, should have been adopted by the court.

To recapitulate briefly: As to the statute of limitations, we are of opinion, first, that the directors of the Traders and Truckers Bank were not express trustees, and may, therefore, plead the statute of limitations; second, that the cause of action against them grew not out of the contract, but out of a breach of duty, and, therefore, the statute of limitations of three years does not apply; third, that the wrongs which constitute the cause of action sued upon are damage to property, and a suit to obtain redress may be revived upon the death of the wrong-doer, or that of the person injured, and as a consequence the limitation is five years, as provided by section 2927 of the Code; and, finally, that as fraud is neither averred nor proved, and no concealment of liability on the part of the defendants is shown, that the act of limitation began to run at the time the alleged wrongs, if any, were committed.

For the foregoing reasons the decree complained of must be reversed and the cause remanded for further proceedings, to be had not in conflict with this opinion.

*Reversed.*