## GRANDY v. WASHINGTON-VIRGINIA RY. CO.

(Circuit Court of Appeals, Fourth Circuit.    November 6, 1923.)

No. 2108.

1. **Corporations ⬒416—Not ordinarily liable on bond of indemnity executed by president, affecting matter not within scope of business.**

A railway corporation would not ordinarily be held liable under general bond of indemnity, executed by its president in the name of the company, affecting a matter not within the scope of the company's business, and without express authority by its charter so to do.

2. **Railroads ⬒154—Charter held to authorize giving of bond to indemnify bondsman of contractor.**

A charter authorizing railroad company to guarantee or become surety in respect to bonds of other corporations engaged in business of transportation *held* to impliedly authorize the execution of a bond to a bonding company to indemnify it against loss or damage in connection with a transaction between a third person and a contractor constructing an extension for a new corporation formed to make the extension in question.

3. **Corporations ⬒426(9)—Held to have ratified act of president in executing indemnity bond.**

Where railroad corporation, on the bringing of suit against contractor's bondsman, appeared and defended the suit and insisted on prosecution of an appeal from an adverse judgment, it ratified the act of its president in executing a special bond of indemnity securing the bondsman.

4. **Indemnity ⬒14—Railroad, executing bond to secure bondsman of a contractor, held bound by judgment against bondsman.**

Where railroad corporation, which executed a special indemnity bond to secure a contractor's bondsman, appeared and defended when called on to do so by the bonding company, and insisted on the prosecution of an appeal from an adverse judgment entered against the bonding company, it was as much bound by the action and judgment of the court as was the bonding company, the formal defendant, though technically the president of the railroad company was not authorized to execute the bond.

5. **Indemnity ⬒4—Railroad company held liable on bond for payment of judgment against obligee in event of an affirmance.**

Assuming that a railroad corporation was not liable under indemnity bond executed by its president, it was nevertheless liable under a special bond of indemnity in which, in consideration of the taking of an appeal, it obligated itself to pay a judgment obtained against the obligee in the first bond by a third person in the event of an affirmance thereof.

In Error to the District Court of the United States for the Eastern District of Virginia, at Alexandria; D. Lawrence Groner, Judge.

⬒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by W. F. Grandy, receiver of the American Bonding & Casualty Company, of Sioux City, Iowa, against the Washington-Virginia Railway Company, a railroad corporation. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions to grant new trial.

J. K. M. Norton, of Alexandria, Va. (Wells & McCormick, of Baltimore, Md., on the brief), for plaintiff in error.

Gardner L. Boothe, of Alexandria, Va., for defendant in error.

Before WOODS and WADDILL, Circuit Judges, and WEBB, District Judge.

WADDILL, Circuit Judge. This is an action of debt, brought by the plaintiff in error against the defendant in error, to recover an indebtedness of $22,649.25, with interest, paid by plaintiff in error to R. C. Hoffman & Co., Inc., being the amount of a judgment of the superior court of Baltimore city against the Chicago Bonding & Insurance Company, a body corporate, of which the plaintiff in error was the successor, and which plaintiff in error seeks to recover from the defendant in error in this suit brought on a special bond of indemnity entered into by the defendant, in which it obligated itself to pay said judgment in the event of an affirmance, thereof by the Court of Appeals of Maryland, and to pay the costs of appeal, whether successful therein or not, and which said judgment was thereafter affirmed.

The defendant in error appeared and contested its liability for the amount of said judgment, among other things averring that neither the defendant in error nor its officers had authority to execute the bond sued on, and their effort so to do was ultra vires and void; that neither by the charter of the defendant in error nor the laws of Virginia had the defendant in error power or authority to execute any bond or other instrument similar to that alleged in the motion for judgment; and said defendant in error further averred that the same conditions were applicable to the prior obligation referred to as that sued on, executed on the 10th day of December, 1918, in which it is claimed that the defendant in error indemnified the American Bonding & Casualty Company for joining in an indemnity to secure R. C. Hoffman & Co., Inc., from loss or damage in connection with a transaction with Franklin Helm for the purchase of railroad ties, equipments, etc., particularly as set forth in the additional ground of defense filed on the 2d day of January, 1923, and that neither the defendant in error nor the Mt. Vernon & Camp Humphrey Railway Company were interested in the transaction entered into between Helm and R. C. Hoffman & Co., Inc., and on account of which the original indemnity was given.

Issue was joined upon the pleadings, a jury being waived by stipulation of counsel in writing, testimony adduced, the facts of the case being in the main agreed upon, and, upon each party moving for a verdict in its favor, the court rendered judgment in favor of the defendant in error, from which judgment this writ of error is sued out.

A brief summary of the facts will be necessary to a correct understanding of the case. The defendant in error was the owner of an

electric line extending from the city of Washington, D. C., to Mt. Vernon, Va., and was desirous of extending its road from there to Camp Humphreys, a distance of four miles. Camp Humphreys being an important army post, at which during the war at times as many as 30,000 soldiers were stationed, the government's requirements at the time necessitated an extension of the electric line, which defendant in error was anxious to make. It was at the height of the war period, and expedition was all important, or the entire road would have been taken by the government, and the extension made by it. Under these conditions, the defendant in error on the 9th of May, 1918, contracted with Franklin Helm to construct the line required; the contract reciting that the defendant in error might form a new corporation with a view of making the extension in question, which was done under the name of "Mt. Vernon & Camp Humphreys Railway." The new company was duly incorporated as of August 21, 1918, and contracted with the said Helm to build its line. The defendant in error owned all of the stock of the new company, with the exception of the shares necessary to effect its organization, and in all respects controlled and directed the affairs of the company.

In order to build the new line, Helm, who claimed to own a street car line near Millersburg, Pa., proposed to procure the rails from that source, to which the defendant in error assented, after it was found, by inspection of the rails by a committee of the defendant in error, that they would be suitable for the purposes desired. None of these rails, however, were actually used, as it was afterwards found that Russian rails made in this country for the government of Russia, and which could not be shipped on account of existing conditions, could be procured and used for the purpose in question. These rails Helm agreed to purchase, with the proceeds of the sale of the rails at Millersburg. He thereupon entered into an agreement with R. C. Hoffman & Co., Inc., to sell to the latter the rails at Millersburg, from the proceeds of which he was to purchase the Russian rails necessary to enable him to carry out his contract with the Mt. Vernon & Camp Humphrey Railway Company. R. C. Hoffman & Co., Inc., required bond from Helm to secure them in their purchase, which bond was given by the Chicago Bonding & Insurance Company, and the bonding company was indemnified in executing the bond to secure R. C. Hoffman & Co., Inc., by the defendant in error. The latter bond was signed by the defendant in error, by Norman Grey, president, not attested by the secretary of the company, nor was its corporate seal attached. It developed that Helm was unable to make title to the rails sold R. C. Hoffman & Co., Inc., and the latter instituted suit against the Chicago Bonding & Insurance Company in the superior court of Baltimore to recover the losses sustained under the Helm contract.

On this suit being instituted, the defendant in error was notified of the same, and requested to participate in the defense of that suit, because of the indemnifying bond given in its name as aforesaid, to save harmless the Chicago Bonding & Insurance Company on the indemnity bond to R. C. Hoffman & Co., Inc., and defendant in error had its at-

torney, who was also its president, appear and participate in the trial. Defendant in error was fully informed and advised by the plaintiff in error and its officers of the circumstances under which its indemnity to R. C. Hoffman & Co. was entered into. This suit was decided adversely to the defendant, and judgment entered against the bonding company in favor of R. C. Hoffman & Co., Inc., for the amount sued for. From this decision an appeal was desired by the defendant in error herein, and the latter requested that the proper appeal be taken to review the judgment, agreeing to indemnify the surety joining in the appeal bond to be executed by the plaintiff in error. Thereupon the appeal was taken, and indemnifying bond given by the defendant in error, being the undertaking sued on in this case. This appeal was also decided adversely to the plaintiff in error, and judgment in favor of R. C. Hoffman & Co., Inc., affirmed, and on payment of the judgment the action in this case was instituted against the defendant in error herein on the indemnifying bond given as aforesaid upon the taking of the appeal, to recover the amount of the judgment in question.

The correctness of the judgment of the District Court, and the liability of the defendant in error herein, should be considered in the light of the indemnity bond executed by the defendant in error on the 10th day of December, 1918, indemnifying R. C. Hoffman & Co., Inc., on account of the transaction with Helm, and which the president of the defendant in error signed, without attestation by the secretary of the company, and without having the seal of the company affixed, as well as under the special indemnity bond, given on taking the appeal in the Maryland suit, to answer the appellate court's decision and judgment, and on which this suit is brought, and upon the combined undertakings.

[1] First. That the defendant in error would not ordinarily be held liable under a general bond of indemnity executed by its president in the name of the company, affecting a matter not within the scope of the company's business, and without express authority by its charter so to do, is manifest. The same would be ultra vires and void, outside of the business of the corporation, and beyond the authority of its president acting in its behalf. But it does not follow that under all circumstances such a transaction may not be lawfully entered into, if it is apparent that what was done was in good faith, with the knowledge of the company, within the reasonable scope of its objects, and of the powers of the president in and about the services in which he was lawfully engaged. The invalidity of such a transaction as becoming guarantor of the obligations and undertakings of another is not based so much upon the want of power on the part of a corporation to bind itself by such contract as upon the ground that the undertaking is foreign to the objects of its creation. The charter of the defendant in error, section second, subsection (c), is as follows:

"When authorized by its board of directors, to guarantee or to become surety in respect to bonds or other obligations, or either, of other corporations (whether incorporated within or without this state), organized for the purpose of/or having the power, either by ownership of stock or otherwise, to own or to become interested in, or to carry on a transportation business by land or by

water, or other business through which this corporation shall seek to derive traffic."

[2] However irregular or informal may have been the act of the president of the defendant in error in executing the guaranty involved, it cannot fairly be said that the company's charter did not contemplate the giving of guaranties in its behalf in just such instances as those here. Considering the particular transaction, the circumstances under which the guaranty was given, the reason calling for its execution, and the fact that it was strictly in furtherance of the company's business in building an extension of its line of street railway, which it was under necessity to build, and with the construction of which its president was in active control, there can be no doubt, in the absence of express power, that implied power existed in the company to give the guaranty, with a view of expediting and completing the construction of the extended line. This implied power arose when the making of the contract became reasonably necessary to enable the company in the conduct of its business, to complete the work required in the extension of its line. A few leading authorities sustaining these views may be cited. Zabriskie v. R. R. Co., 23 How. 381, 16 L. Ed. 488; Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693; Green Bay & M. R. Co. v. Union Steamboat Co., 107 U. S. 98, 2 Sup. Ct. 221, 27 L. Ed. 413; Pittsburgh, C. & St. L. R. Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, 385, 9 Sup. Ct. 770, 33 L. Ed. 157, 162; Jacksonville M. P. & Nav. Co. v. Hooper, 160 U. S. 514, 16 Sup. Ct. 379, 40 L. Ed. 515; Tod v. Kentucky Union Land Co. (C. C.) 57 Fed. 47; Mathesius v. Brooklyn Heights R. Co. (C. C.) 96 Fed. 792; Winston v. Gordon, 115 Va. 899, 80 S. E. 756; Meem, etc., v. Big Axe, etc., Coal Co., 117 Va. 770, 86 S. C. 118; 2 Fletcher, Enc. Corporations, §§ 775, 792, 796, 926, and 927.

The decision of the Supreme Court in the first above cited case, where an effort was being made to relieve the corporation from an obligation of suretyship by reason of the intra vires acts of the company, its officers and stockholders, will be found of special interest as bearing upon the merits of the controversy here. At page 400 of 23 How. (24 L. Ed. 693) Mr. Justice Campbell, speaking for the unanimous court, said:

"A corporation, quite as much as an individual, is held to a careful adherence to truth in their dealings with mankind, and cannot, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct had superinduced." Zabriskie v. Cleveland R. R. Co., supra, 23 How. 381, 400, 401, 16 L. Ed. 488.

In our view of the testimony in this case, it is manifest that the giving of the guaranty in question, by the president, in the name of his company, was done in the interest of the company, which was at the time acting by and through its president, hurriedly engaged by reason of war conditions, in a lawful undertaking, viz. the execution of the contract for the extension of its line to Camp Humphreys, and what the president did was with the view of serving the company's interests, in the effort to expedite the emergency work in question, and

the fact that mishap befell the procuring of the equipment guaranteed, should not avoid the contract, nor place the burden arising therefrom upon innocent persons, as the president in all that he did was manifestly acting in good faith, with the full knowledge of, and to the best interest of, his company.

[3] The course pursued by the defendant in error upon the bringing of the suit to enforce the liability arising from the failure to furnish the railroad equipment on account of which the guaranty was given in its behalf by its president shows that the defendant in error knew of and ratified the acts of its president (Pittsburgh R. R. Co. v. Keokuk, supra, 131 U. S. 381, 9 Sup. Ct. 770, 33 L. Ed. 157; Jacksonville M. P. & Nav. Co. v. Hooper, supra, 160 U. S. 522, 16 Sup. Ct. 379, 40 L. Ed. 515, and cases cited), as is particularly shown by its directing the taking of the appeal herein referred to, and from the recitals contained in the appeal bond.

[4] Second. Assuming the possible existence of the technical defenses interposed by the defendant in error to the enforcement of liability under the bond of indemnity executed by it by its president in favor of R. C. Hoffman & Co., Inc., in connection with the Helm sale, nevertheless, in the light of the facts and circumstances of this case, the right of recovery would not be denied herein, as well because of defendant in error appearing in the Baltimore suit, and contesting its liability therein in favor of R. C. Hoffman & Co., Inc., upon the bond sued on, as under the special bond of indemnity given in order to take the appeal to the Court of Appeals of Maryland from the adverse decision of the lower court, and on which bond of indemnity this suit is especially based. The sole question involved in that litigation was whether or not R. C. Hoffman & Co., Inc., could recover on the bond of indemnity executed in its favor by the Chicago Bonding & Insurance Company, predecessor of the plaintiff in error herein, and the defendant bonding company in that case called in the defendant in error here, who it claimed indemnified it for going upon the bond to secure R. C. Hoffman & Co., Inc. The defendant in error responded, and participated in the trial of that suit, which was decided in favor of R. C. Hoffman & Co., Inc., and adversely to the bonding company, and insisted upon the prosecution of the appeal from the judgment thus entered, and it is as much bound by the action and judgment of the court as was the bonding company whose undertaking it guaranteed.

Had R. C. Hoffman & Co. won in this litigation, either because nothing was found to be due it from Helm, or other infirmity in the bond undertaking the guaranteeing of the Helm contract or otherwise, the decision would have inured directly to the benefit of the defendant in error herein, the privy of the defendant, and who participated in the defense of that suit. Having lost the suit, it is as much affected and bound by the result as is the American Bonding & Casualty Company, the formal defendant, and will not be allowed to ignore the decision and escape liability as between itself and the defendant therein on account of the alleged infirmity in the bond of indemnity executed

in its behalf. The decision of this court in the comparatively recent case of Maryland Casualty Co. v. Gates, 290 Fed. 65, sustains this view, and to that case, and the cases there cited, properly applicable here, we refer without further citation of authority.

[5] Third. Not only in our view is the defendant in error liable for the reasons stated above, but in this case, where, acting in its full corporate capacity, without any question of doubt or authority, and expressly authorized by its charter to execute such instruments, it gave the bond of indemnity sued on and set forth in the plaintiff's declaration, in which it among other provisions recited:

"Whereas there was an alleged default upon the conditions and covenants of said bond by the said Franklin Helm, and suit was brought upon said bond by said R. C. Hoffman Company, Inc., in the superior court of Baltimore city, and a judgment was procured in said court by the said R. C. Hoffman Company, Inc., for the sum of twenty thousand dollars ($20,000), the penalty of said bond, with costs and interests; and

"Whereas the said Washington-Virginia Railway Company, the indemnitor of the Chicago Bonding & Insurance Company, directed and is desirous of the prosecution of an appeal from said judgment to the Court of Appeals of Maryland, and has requested the American Bonding & Casualty Company, of Sioux City, Iowa, (which has absorbed the said Chicago Bonding & Insurance Company, and now stands in the place of the said Chicago Bonding & Insurance Company) to furnish the necessary appeal bond for said appeal by procuring the necessary surety for said purpose; and

"Whereas, the said American Bonding & Casualty Company, of Sioux City, Iowa, has complied with the directions and requests of the said Washington-Virginia Railway Company, upon the express condition that the said Washington-Virginia Railway Company will pay and satisfy said judgment in said cause, with all interests, costs, counsel fees, and expenses in said proceeding in the event said judgment is affirmed on said appeal, and if there should be a reversal of said judgment by which the said American Bonding & Casualty Company of Sioux City, Iowa, standing in the place of the said Chicago Bonding & Insurance Company, should be declared not liable for said judgment, then and in that event the said Washington-Virginia Railway Company is to pay all proper expenses and counsel fees incurred by the said American Bonding & Casualty Company, of Sioux City, Iowa, by virtue of said appeal; and

"Whereas, the said Washington-Virginia Railway Company became the indemnitor for the said Franklin Helm, as heretofore recited, by virtue of the fact that said Franklin Helm was engaged as a contractor for the said Washington-Virginia Railway Company in the construction of its road in the state of Virginia, and because said Washington-Virginia Railway Company was thus aiding the said Helm to procure in said transaction with R. C. Hoffman Company, Inc., the necessary rails and equipment used in the construction of the road of the said Washington-Virginia Railway Company in said state of Virginia:

"Now, therefore, in consideration of the said American Bonding & Casualty Company, of Sioux City, Iowa, procuring said appeal bond and prosecuting said appeal to the Court of Appeals of Maryland, the said Washington-Virginia Railway Company does hereby covenant and agree that it will save harmless and indemnify the said American Bonding & Casualty Company against the payment of said judgment, should it be affirmed on appeal, together with the necessary interest, court costs, counsel fees, and other proper expenses incident to said appeal and does also covenant and agree to save harmless and indemnify the said American Bonding & Casualty Company, of Sioux City, Iowa, from any and all counsel fees and expenses incident to said appeal in the event that said judgment should be reversed and the said American Bonding & Casualty Company held not liable for the payment of said judgment,"

there can and should be no doubt of liability or escape from responsibility for payment of the debt sued for.

The decision of the lower court will be reversed, and the cause remanded, with directions to the District Court to grant a new trial and proceed in accordance with the views herein expressed.

Reversed.