# Wytheville.

TRUST COMPANY OF NORFOLK, DEFENDANT, V.
R. D. L. FLETCHER, PLAINTIFF.

June 13, 1929.

Absent, Prentis, C. J.

The opinion states the case.

*J. Brooks Mapp* and *Tazewell Taylor*, for the plaintiff in error.

*James E. Heath, James G. Martin*, and *Topping & Topping*, for the defendant in error.

WEST, J., delivered the opinion of the court.

R. D. L. Fletcher, herein called plaintiff, sued the Trust Company of Norfolk, herein called defendant,

to recover damages for the sale of worthless stock sold the plaintiff by the defendant. There was a verdict and judgment in favor of the plaintiff for $9,750.00, to which this writ of error was allowed.

The plaintiff claims damages of the defendant for the sale to him by the defendant of 100 shares of eight per cent preferred stock of the American Home Furnishers Corporation.

In 1919 and prior thereto, Philip Levy and Company, Incorporated, conducted a successful retail furniture business in the city of Norfolk. Under the same ownership, there were organized subsidiary corporations, known as American Home Furnishers Corporation, American Cabinet Manufacturing Corporation and Granby Phonograph Corporation, respectively. In 1920 these three corporations and Philip Levy and Company, Incorporated, were consolidated under the corporate name of American Home Furnishers Corporation. The new corporation issued $1,500,000.00 of eight per cent preferred stock in that company. At the same time a large amount of common stock in the company was also issued. The eight per cent preferred stock was sold to a syndicate at $87.50 per share. The purchasers consisted of a number of investment banking houses, including the defendant. The common stock of the consolidated company was all held subordinate to the eight per cent preferred stock which was purchased by the syndicate and sold to investors.

The American Home Furnishers Corporation was organized in 1920. On June 19, 1920, the defendant telegraphed plaintiff at Hot Springs, Va., asking him to stop over to see him in Norfolk on his way home, Cape Charles, Va. When plaintiff arrived in Norfolk Mr. A. L. Eggleston, assistant treasurer of the defend-

ant, endeavored to interest him in the purchase of stock in the American Home Furnishers Corporation. Prior to that time plaintiff knew nothing about the corporation.

On July 6, 1920, Eggleston wrote a letter to Fletcher at Cape Charles, Virginia, enclosing descriptive circulars in which he said: "Our thorough familiarity with the entire proposition warrants giving our unqualified recommendation to this issue as a safe, high grade investment, combining exceptional strength of security with an extremely profitable yield."

In the letter he used this language: "You may have no hesitancy in offering this (stock) to your friends as a high class investment, and we believe that you will make friends in selling this."

On March 6, 1923, Fletcher wrote Eggleston, assistant treasurer of the trust company, informing him that he owned 100 shares General Motors seven per cent debentures, and asking what he would think of his selling them and buying 100 shares American Home Furnishers Corporation eight per cent preferred stock if it were to be had. Mr. Eggleston replied on March 7, 1923, advising Fletcher that it "would be my judgment that the exchange of this stock for a like amount of American Home Furnishers Corporation eight per cent preferred stock would make an attractive exchange, provided the stock could be purchased at around ninety-seven-and-a-half." Further on in the letter Eggleston offers eighty-eight shares of the stock at ninety-seven-and-a-half and promises to secure the remaining twelve shares at the same price. Fletcher replied on March 8, 1923, requesting Eggleston to make the exchange. After some correspondence between the parties, the transaction was finally consummated March 29, 1923.

The plaintiff contends that the writ of error should be dismissed for the failure of the defendant to execute the supersedeas bond in the penalty of $15,000.00 within the time prescribed by law.

The writ of error was issued July 2, 1928, and legal service of the writ was accepted July 6, 1928, by defendant's counsel. The bond was given in August, 1928, and lodged with the clerk of the court about the middle of that month.

The bond was "executed by Geo. T. Tyson, clerk of the Circuit Court of Northampton county, acting under a power of attorney given to him by the American Surety Company, of New York, before himself, as clerk." The seal of the company was affixed to the bond by H. H. Adams, deputy for Geo. T. Tyson, clerk.

Not until the filing of his brief herein, which was served on counsel for the defendant on March 18, 1929, more than seven months after the bond was given, did the plaintiff interpose any objection to its sufficiency. The motion to dismiss the writ of error was not actually presented until the case was called for hearing in this court.

Good faith required that the plaintiff make his objection to the bond promptly and take the necessary steps to require that a proper bond be given, or upon failure of defendant to execute such bond, to move that the writ of error be dismissed. At the time the original bond was executed, the defendant (plaintiff in error) had ample time within which a new bond could be required and given, or a new writ secured, and plaintiff's failure to take such steps will be construed as a waiver of any defect in the bond.

In *Virginia Fire & Marine Ins. Co. v. New York Carousal Mfg. Co.*, 95 Va. 515, 28 S. E. 888, 40 L. R. A.

237, the court, speaking through Judge Riely, said: "If the defendant in error was not satisfied with the bond, or deemed the defect now pointed out a sufficient ground for the dismissal of the appeal, he should have taken the necessary steps, within the time that a new bond might have been given, or another appeal allowed (Code, section 3474), where he has had a reasonable time in which to do so, to require a proper bond to be given, and, in the event of a failure to give it, moved to dismiss the appeal. It is too late to wait, before making such motion, until a new bond cannot be given, or another appeal allowed. To dismiss the appeal at this late day, under these circumstances, would be grossly unjust. The defendant in error, after such delay, must be considered as having waived any objection to the defect in the bond. Following the course which has been heretofore pursued by this court in dealing with similar cases, the motion to dismiss must be overruled. *Jackson* v. *Henderson*, 3 Leigh 196; *Pugh* v. *Jones*, 6 Leigh 299; *Brown* v. *Matthews*, 1 Rand. 462; *Johnson* v. *Syme*, 3 Call. 522; *Acker* v. *A. & F. R. Co.*, 84 Va. 648 [5 S. E. 688], and *Orr* v. *Pennington*, 93 Va. 268 [24 S. E. 928]."

In *Northern Neck Mutual Fire Association* v. *Turlington*, 136 Va. 44, 116 S. E. 363, Judge Prentis, in the unanimous opinion of the court, approved the *Virginia Fire & Marine Ins. Co. Case, supra*, and stated the law thus:

"(1) When this case was called for argument here, the defendants in error, hereafter called the plaintiffs, moved to dismiss the writ of error upon the ground that the condition of the supersedeas bond does not conform to the statute (Code, 1919, section 6351). The duty of a defendant in error or appellee, under such circumstances, is clearly indicated in the case of

*Virginia Fire and Marine Ins. Co.* v. *New York, etc., Co.,* 95 Va. 515, 28 S. E. 888, 40 L. R. A. 237—that is, that good faith requires that he should make the motion before the expiration of the time within which a new bond can be given, so that it can be amended or corrected, and that failure to do so will be deemed a waiver of such objection.

"(2) It is claimed in this case that this rule cannot be applied because the bond here was not executed until October 20, 1921, and the year within which it could have been given expired on the next day, October 21st. This doubtless excuses the failure to make the motion within the year, but it does not relieve from the obligation to make it promptly just as soon as the error was discovered, so that it could be cured by the tender of a better bond before the case was called in this court."

The motion to dismiss the writ of error was properly overruled.

The plaintiff in error alleges that the court erred—

(1) In rejecting and striking out the defendant's pleas of the statute of limitations;

(2) In misdirecting the jury;

(3) In failing to properly instruct the jury;

(4) In failing to set aside the verdict as contrary to the law and the evidence.

As stated, this suit was brought by the plaintiff to recover as damages the purchase price paid by him to the defendant for certain worthless stock. The plaintiff contends that the five years statute of limitations applies, while the defendant contends that the one year statute applies. Whether the one year or the five years statute applies depends upon whether or not the cause of action would survive. If it would survive, the limitation is five years; if it would not survive, the limitation is one year.

Virginia Code 1919, section 5818, reads as follows: "Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die, it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued."

██ ██ At common law the action would survive if the defendant was the gainer of the exact amount that the plaintiff lost, as was true in the instant case. *Patton* v. *Brady*, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713.

By Virginia Code 1919, section 5385, the common law rule as to what actions survive has been enlarged so as to read as follows: "An action of trespass, or trespass on the case, may be maintained by or against a personal representative for taking or carrying away any goods, or for the waste or destruction of, or damage to, any estate of or by his decedent."

The cause of action also survives wherever the injury to property is direct, whether the wrongdoer profits by his wrong or not. In the instant case, the conduct complained of was a direct injury to plaintiff's property. By fraud and misrepresentation of the defendant the plaintiff was deprived of the possession of his property, and the specific property of the plaintiff was taken and appropriated to defendant's use.

██ In *Winston* v. *Gordon*, 115 Va. 899, 80 S. E. 756, in an opinion by Judge Keith, it appears from the syllabus that the court held, in a case where the directors of a bank were being sued for neglect of duty, that the wrongs which constitute the cause of action are damages to property, revivable upon the death of either party and that the limitation applicable thereto

is five years. At page 915, of 115 Va. (80 S. E. 763), Judge Keith, in answer to the question What: tort actions survive? says: "Those for wrong to property, real or personal, or which grow out of breach of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract."

The first assignment of error is without merit.

Defendant's assignments of error No. 2 and No. 3 are based upon the action of the court in giving and refusing instructions.

The instructions complained of are instructions "A" and "B" which were granted for the plaintiff and read as follows:

"A. The court instructs the jury that if one represents as true what is really false, in such a way as to induce a reasonable man to believe it, and the representation is meant to be acted on, and he to whom the representation is made, believing it to be true, acts on it and in consequence thereof sustains damage, there is such fraud as will support an action for deceit at law, or a bill for rescission of the transaction in equity. Whether the representation is made innocently or knowingly, if acted on, the effect is the same. In the one case the fraud is constructive; in the other it is actual."

"B. The court instructs the jury that if you believe from the evidence that the defendant represented to the plaintiff that the stock of the American Home Furnishers Corporation which it sold to him was worth at least ninety-seven-and-a-half ($97.50) dollars per share; that this representation operated as an inducement to the plaintiff to purchase the stock, and that the plaintiff was justified under the circumstances in relying upon it; but that, as a matter of fact, the said

stock was wholly worthless, then whether the said representation was made innocently or knowingly, it amounted to a fraud on the plaintiff and the plaintiff is entitled to recover in this action such damages as he has sustained thereby.''

■ The principal objection urged against these instructions is, that there were no false representations made of material facts, and, if there were, they were innocently made and could not be the basis of a recovery.

There is ample evidence showing that the defendant's representations as to the value and desirability of the stock were false. That defendant may have believed them true is immaterial. The question is whether the purchaser believed them true and was misled to his injury thereby; and it clearly appears from the evidence that he was.

■ In *Grim* v. *Byrd*, 32 Gratt. (73 Va.) 300, Judge Staples, discussing the law as to the *scienter*, used this language: "Whatever conflict of opinion may have existed in the English writers on this subject, the doctrine is believed to be well settled in the United States, that a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had the right to rely, is a ground for a rescission by a court of equity, although the party making the representation was ignorant as to whether it was true or false; and the real inquiry is not whether the vendor knew the representation to be false, but whether the purchaser believed it to be true, and was misled by it in entering into the contract. For in such case, whether the false representation was innocently made or knowingly made, the effect is the same upon the purchaser.''

 It cannot be said that the statement made by Eggleston about the stock was a statement of his opinion and not a statement of a fact. After investigation, with knowledge of the stock at his command, Eggleston told Fletcher it was his "judgment that the exchange of this· stock (General Motors) for a like amount of American Home Furnishers Corporation preferred stock would make an attractive exchange." The exchange was made. The result was that the defendant by this transaction, which it recommended to its client, made a profit of $9,750.00, which amount the client lost. The plaintiff was only a stockholder in the company while Eggleston, as vice-president of the defendant, was the active man in organizing the syndicate and selling the stock. He was in a position to know, if he did not already know, the condition of the company and the value of its stock.

 At page 301, of 32 Gratt. in *Grim* v. *Byrd*, Judge Staples also says: "But even matters of opinion may amount to affirmation, and be the inducement to a contract, especially where the parties are not dealing on equal terms and one of them has, or is presumed to have, means of information not equally open to the other."

 On the question whether it is necessary to prove that the representation was knowingly false, where an action of deceit at law is brought, the authorities are not in entire harmony.

In *Lowe* v. *Trundle*, 78 Va. 65, the court (syllabus) held: "If one represents as true what he knows is false, in such way as to induce a reasonable man to believe it, and the representation is meant to be acted on, and he to whom the representation is made, believing it true, acts on it, and thereby sustains damage, there is fraud to support an action of deceit at law, and to found a rescission of the transaction in equity.

"Whether the misrepresentation is made innocently, or knowingly, if acted on, the effect is the same. In the one case, the fraud is actual; in the other, it is constructive."

Mr. Kerr, at section 2 of his work on Fraud and Mistake, quoted at page 67, 78 Va., declares this to be the law: "If a man represents as true that which he knows to be false, and makes the representation in such a way or under such circumstances as to induce a reasonable man to believe that it is true, and is meant to be acted on, and the person to whom the representation has been made, believing it to be true, acts upon the faith of it, and by so acting sustains damage, there is fraud to support an action of deceit at law, and to be a ground for rescission of the transaction in equity."

In *Cerriglio* v. *Pettit*, 113 Va. 533, 75 S. E. 303, which was an action at law for deceit, this court (syllabus) held: "If one represents as true what he knows to be false, in such a way as to induce a reasonable man to believe it, and the representation is meant to be acted on, and he to whom the representation is made, believing it true, acts on it, and, in consequence thereof, sustains damage, there is such fraud as will support an action for deceit at law, or a bill for a rescission of the transaction in equity. Whether the misrepresentation is made innocently or knowingly, if acted on, the effect is the same. In the one case, the fraud is constructive; in the other, it is actual."

The language of the court in the *Cerriglio Case*, *supra*, was approved by this court in *Jordan* v. *Walker*, 115 Va. 109, 78 S. E. 643, which was an action for deceit.

The two cases last above referred to were approved by this court in the case of *Schmelz Bros.* v. *Quinn*, 134 Va. 78, 113 S. E. 845. In this case the court (syllabus) held: "If a party innocently misrepresents

a material fact by mistake, the effect is the same on the other party who is misled by it as if he who innocently made the misrepresentation knew it to be positively false. The real question in such a case is not what the party making the representation knew or believed, but was the representation false, and the other party misled by it."

It is true that the *Schmelz Case* was in equity, but we perceive no difference in the principle involved in an action at law for damages and a suit in equity for rescission.

There are cases to the contrary, but we think the better reason and the greater weight of authority support the doctrine which we approve in the instant case.

The second and third assignments of error are without merit.

In the fourth assignment of error it is claimed that the court erroneously refused to set aside the verdict of the jury as contrary to the law and the evidence.

From what has been said, it clearly appears that the verdict is not contrary to the law. Upon a careful consideration of the record, it is equally clear that there is ample evidence to support the verdict of the jury.

It sufficiently appears from the record that the defendant's representations to the plaintiff to induce him to buy the stock of the American Home Furnishers Corporation were false; that the plaintiff believed the same to be true and was induced thereby to make an exchange of the stock, by which he lost the sum of $9,750.00, awarded him as damages by the jury.

The judgment will be affirmed.

*Affirmed.*