PATHE EXCHANGE, Inc., v. DALKE.

UNIVERSAL FILM EXCHANGES, Inc., v. SAME.

FIRST NAT. PICTURES, Inc., v. SAME.

FOX FILM CORPORATION v. SAME.

Nos. 3079–3082.

Circuit Court of Appeals, Fourth Circuit.

April 13, 1931.

Frank F. Nesbit, of Washington, D. C. (George N. Conrad and George D. Conrad, both of Harrisonburg, Va., on the brief), for appellants.

F. S. Tavenner, of Woodstock, Va. (F. S. Tavenner, Jr., of Woodstock, Va., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

NORTHCOTT, Circuit Judge.

These are suits in equity brought in the District Court of the United States for the Western District of Virginia, at Harrisonburg, by appellants against appellee, herein referred to as defendant. The bills alleged that the defendant entered into a written contract with the plaintiffs for the exhibition of their moving picture films, which were copyrighted ·under the laws of the United

States, and that defendant in violation of the terms of the contract and in violation of the copyright laws of the United States, exhibited for profit such motion pictures without the authority or license of the plaintiffs, owners of said copyrights, to do so, and that the defendant profited greatly by such wrongful action. The bills prayed for the recovery of the profits derived from the alleged infringing acts and the damages sustained by the complainants pursuant to the provisions of the copyright law. The bills prayed for an accounting by the defendant as to the amount of profit made by him in the alleged wrongful exhibitions of said motion pictures.

Motion was made by defendant to dismiss the bills on the ground that they were wanting in equity, and that there existed a full, complete and adequate remedy at law, and later, under the motion, the question was raised that the action was barred by the statute of limitations. The learned judge below in an opinion filed with the record held that under the Virginia statute the suit was barred by the statute of limitations. Plaintiffs then tendered an amended bill, and on objection by the defendant, the court below refused to permit the filing of the amended bill, from which action of the court in holding that the statute of limitations, applicable to the suits, was one year, and in refusing to permit the filing of the amended bill, these appeals were brought.

The United States statute, providing for penalties for infringement of a copyright, is found in title 17, section 25, of the USCA, and permits recovery in certain sums for such infringement as damages.

The Virginia statute of limitations, in point, is found in section 5818 of the Code of Virginia for 1919, and is as follows: "Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued."

From the reading of this section it will be seen that the question to be determined is whether or not the suit, in case of a death of a party, could be brought by or against his representative. If such be the case, the limitation is five years, but if such be not the case, then the limitation is one year.

This cause, if properly an equity case, falls under the concurrent jurisdiction of a court of equity, and this court is here bound to follow the applicable Virginia statute of limitations. In 1 Story's Eq. Jurisp. (6th Ed.) § 529, it is said, speaking of suits for an accounting: "In cases of this sort, where the demand is strictly of a legal nature, or might be cognizable at law, courts of equity govern themselves by the same limitations as to entertaining such suits, as are prescribed by the statutes of limitations in regard to suits in courts of common law in matters of account. * * * In so doing, they do not act, in cases of this sort (that is, in matters of concurrent jurisdiction), so much upon the ground of analogy to the statute of limitations, as positively in obedience to such statute."

See, also, 21 Corpus Juris, p. 254, note 85; 3 Cyc. Fed. Proc. § 684, p. 170; Rose, Fed. Juris. (3d Ed.) § 525; McCaleb v. Fox Film Corp. (C. C. A.) 299 F. 48. In the notes to the foregoing texts are numerous cases holding that the statute of limitations of the state in which the suit is pending governs.

The judge below seemed in doubt as to what the common law of Virginia was in respect to the survivability of a cause of action where the plaintiff seeks to recover profits gained by the defendant, by means of a wrongful act such as is here charged; but we have reached the conclusion, after an examination of the authorities, that in such case even at common law, the suit did survive. It was early recognized in England that it was contrary to the principles of justice that where by means of a tort during the lifetime of either of the parties the plaintiff's estate had been diminished or his property taken or carried away, or by means of a tort the defendant's estate had been increased or added to, the executors or administrators should not be allowed to assert or not be required to answer such claim. To remedy this obvious injustice the Statute of 4 Edward III, de Bonis Asportatis in Vita Testotoris, was passed in 1330. Hambly v. Trott, Cowper, 376, 98 Engl. Repr. 1136; Berwich v. Andrews, 2 Ld. Raym. 973; Lansdowne v. Lansdowne, 1 Maddock, 116, 56 Engl. Repr. 44.

As a convenient restatement of the distinction and as a test for distinguishing the class of torts which survived at common law from the other, Lord Mansfield in Hambly v. Trott, Cowp. 371, 376, 98 Engl. Repr. 1136 (decided in 1776), laid it down that, if the

tort was one which benefits the offender in some way, it survived, but if it merely injured the sufferer without benefiting the property or estate of the wrongdoer, it was a merely personal tort which would not survive. He said: "Here therefore is a fundamental distinction. If it is a sort of injury by which the offender acquires no gain to himself at the expense of the sufferer as beating or imprisoning a man, etc., there the person injured has only a reparation for the delictum in damages to be assessed by a jury. But, where, besides the crime, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor. As, for instance, the executor shall not be chargeable for the injury done by his testator in cutting down another man's trees, but for the benefit arising to his testator for the value or sale of the trees he shall. So far as the tort itself goes, an executor shall not be liable; and therefore it is that all public and all private crimes die with the offender, and the executor is not chargeable; but, so far as the act of the offender is beneficial, his assets ought to be answerable, and his executor therefore shall be charged."

At the time of the separation of the colonies from the mother country such an action survived the death of a party.

In Patton v. Brady, 184 U. S. 608, 614, 22 S. Ct. 493, 495, 46 L. Ed. 713, it was said: "If we turn to the common law, there the rule was that if a party increased his own estate by wrongfully taking another's property an action against him would survive his death, and might be revived against his personal representative. In the case of United States v. Daniel, 6 How. 11, 12 L. Ed. 323, which was an action against one who had in his lifetime been marshal of a district, to recover damages which the plaintiffs had sustained by reason of false returns made on certain executions by one of defendant's deputies, it was held that the action did not survive, because the decedent had received no benefit and had not increased his estate by means of the wrongful act."

That this is the view generally taken by the Virginia courts seems to us clear from an examination of a number of Virginia cases. Trust Co. of Norfolk v. Fletcher, 152 Va. 868, 148 S. E. 785, 787; Mumpower v. City of Bristol, 94 Va. 737, 740, 27 S. E. 581; Cover v. Critcher, 143 Va. 357, 130 S. E. 238; Hawling v. Chapin, 115 Va. 792, 80 S. E. 587; Winston v. Gordon, 115 Va. 899, 80 S. E. 756.

However the case may be as to the common law, we think the Virginia statute, above quoted, settles the question conclusively. There can be no doubt that the purpose of the Virginia statute was remedial, and enlarged rather than restricted the classes of action that survived the common law.

In Lee's Adm'r v. Hill, 87 Va. 497, 502, 12 S. E. 1052, 1053, 24 Am. St. Rep. 666, the court in discussing the purpose and construction of this statute said:

"If, however, there were any doubt that the cause of action asserted in the present case survives at common law, it would seem clear that the action was rightly revived by virtue of the statute already alluded to. Code, § 2655 [now § 5385].

"Under that statute, which is an extension of the statute 4 Edw. III, c. 7, de bonis asportatis, an action of trespass, or trespass on the case, may be maintained by or against a personal representative, not only for the taking and carrying away of goods, but for any damage to estate, either done or suffered by the decedent. It is a remedial statute, and is, therefore, to receive, as the English statute has always received, a liberal construction."

And in Trust Company of Norfolk v. Fletcher, supra, the court said: "By Code 1919, § 5385, the common-law rule as to what actions survive has been enlarged."

Also in Sullivan v. Associated Billposters et al. (C. C. A.) 6 F.(2d) 1000, 1004, 42 A. L. R. 503, the court said: "The harshness of the rule that personal actions die with the person has led to its modification in a greater or less degree by statute in most of the states."

Here there can be no question, under the allegation of the bills which must, on the motion to dismiss, be taken as true, that the defendant's estate was increased by the profits of this wrongful act, and not only that but that the plaintiffs were pecuniarily damaged by such act.

In Head v. Porter (C. C.) 70 F. 498, 499, Judge Colt, in an able opinion, said:

"In case of the death of the plaintiff, a bill in equity for the infringement of a patent does not abate, but may be prosecuted to final judgment by his representatives. * * *

"Profits are the gains or savings made by the wrongdoer by the invasion of the complainant's property right in his patent. They are the direct pecuniary benefits received, and are capable of a definite measurement.

Calling them the 'measure of damages in equity' does not mean that they are the same as damages in an action at law. They are clearly not the same. 'Profits in equity are the gain, or saving, or both, which the defendant has made by employing the infringing invention. This gain or saving is a fact. It is an actual pecuniary benefit which has resulted directly from the defendant's wrongful use of the plaintiff's property, which he has had and enjoyed, and to which, on equitable theories, the plaintiff is entitled.' 3 Rob. Pat. § 1062, note 7, par. 3. At law damages may include profits, but they also include other elements necessary to make up the actual loss, and to give full compensation to the injured party. They may be still further increased by way of punishment for the wrong. But equity, unless by statute, exacts nothing by way of loss or punishment from the wrongdoer except his actual gains. * * *

"The general rule that personal actions die with the person does not apply where property is acquired which benefits the testator. * * *

"A patent is an incorporeal property right in an invention, created by statute. Property rights, whether corporeal or incorporeal, are governed by the same principles, and should receive equal protection. When a person wrongfully appropriates a patented invention, it is an invasion of the patentee's right of property, and the gains or profits derived from such piracy belong to the patentee. Because the machine in which the wrongdoer may have embodied his piracy may not belong to the patentee does not affect the real character of the act. I can see no difference in principle between a suit by the owner of a patent against an infringer to recover the profits he has made and a suit by the owner of land or of a mine against a wrongdoer to recover the value of timber or ore taken. I cannot assent to the proposition that the profits actually made by an infringer, for which recovery is sought by a bill in equity, are the same as damages in an action of libel, slander, diversion of a water course, trespass in breaking up meadow or pasture land, and similar actions of tort. The former are the actual, direct pecuniary benefits, capable of definite measurement, acquired by the wrongdoer; the latter are primarily the loss suffered by the injured party where the wrongdoer realizes no pecuniary benefits, or only such as are indirect, indefinite, or rest in speculation, compromise, or arbitrary adjustment. For these reasons I am of opinion

that this cause of action survives, and that the motion to dismiss should be denied."

See, also, Hohorst v. Howard (C. C.) 37 F. 97; Griswold v. Hilton (C. C.) 87 F. 256.

We are of the opinion that the prayer for an accounting in the bills would not of itself give equitable jurisdiction, and that in the bills as originally filed there were no allegations of fact upon which jurisdiction in equity could be predicated. This, however, did not justify their dismissal. As they unquestionably stated good causes of action at law, they should have been transferred to the law side of the docket and the appropriate relief awarded there. The question of amendment was one resting in the sound discretion of the district judge. He denied the motions to amend, probably because of the opinion that the only substantial relief sought was the recovery of damages for infringement and that the granting of this relief was barred by the statute of limitations. When the cases go back the motion to amend may be renewed and such action taken thereon as may be appropriate.

In view of our conclusion as to the statute of limitations being five years instead of one year, as held by the court below, it is not necessary to discuss the question raised by appellants as to whether the statute of limitations was properly pleaded, or the question as to whether the court below should have permitted the filing of the amended bill.

The court below was in error in holding that the one-year limitation applied, and the decrees are reversed and the causes remanded for further proceedings.

Reversed and remanded.