**Albert E. ARENT, Executor of the Estate of Louis M. Court, Deceased, Appellant,**

v.

**Richard P. BRAY, Jr., Appellee.**

**No. 10652.**

United States Court of Appeals Fourth Circuit.

Argued Dec. 7, 1966.

Decided Jan. 10, 1967.

Karl G. Feissner, Washington, D. C., (I. J. Crickenberger, Crickenberger & Moore, Arlington, Va., and Alpern & Feissner, Washington, D. C., on the brief), for appellant.

Charles Stevens Russell, Arlington, Va., (Phillips, Kendrick, Gearheart & Aylor, Arlington, Va., on the brief), for appellee.

Before SOBELOFF, BOREMAN and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Circuit Judge:

This is an appeal by the executor of the estate of Dr. Louis M. Court from a judgment dismissing an action against Richard P. Bray, Jr., for damages allegedly resulting from negligent or

fraudulent inducements to purchase stock in Polytron Oil Company, Inc. The plaintiff sought to recover $35,000 which he invested in the corporation during its short life, plus $76,000 as punitive damages. The case was tried without a jury and presented purely factual issues.

■ We notice first a matter which arose after the trial. The plaintiff died after the hearing and determination of the case but before the District Court's judgment was entered. The defendant moved to dismiss on the ground that the cause of action was personal and abated with the death of the plaintiff. The District Court denied the motion and entered an order substituting the executor as party plaintiff, but gave judgment for the defendant. We think the District Judge was correct in holding that the cause of action survived, since the injury complained of is one to plaintiff's property rather than to his person or reputation. Trust Co. of Norfolk v. Fletcher, 152 Va. 868, 148 S.E. 785, 73 A.L.R. 1111 (1929); Winston v. Gordon, 115 Va. 899, 80 S.E. 756 (1914). Thus, under Va.Code § 8-24 (1957), the five-year statute of limitations applies.

The history of the case, based on facts found by the District Judge or not disputed by the parties, is as follows. Marvin Wire, the sole owner of a company known as Polytron, which marketed an oil additive, undertook to incorporate his business. Wire attempted to persuade Richard Bray, an attorney and the defendant in this case, to seek investors, promising to pay Bray a "finder's fee." Bray testified that he declined, but undertook the necessary legal work in connection with incorporation of the business. The plaintiff, a mathematician holding a Ph.D. degree, had served in a professional capacity in the Government and on the faculty of George Washington University, and had successfully invested in a number of business ventures. He first communicated with Wire about July 15, 1960 with a view to investing in Polytron. Shortly thereafter, at Wire's instigation, Bray telephoned Dr. Court. By August 3d, they had held approximately six or seven telephone conversations and met on one occasion.

On August 3, 1960, Dr. Court and other prospective investors met in Wire's office to execute a shareholders' agreement prior to incorporating the company. Before the agreement was signed and any funds were invested, the interested persons questioned Wire as to the assets, liabilities, and structure of the proposed corporation. Under the terms of the shareholders' agreement, Dr. Court subscribed for $5000 worth of preferred stock and for each share purchased, Wire was to assign six shares of his common stock, giving Dr. Court, by August 30th, when he completed this purchase, 250 shares of preferred and 1500 shares of common stock. Thereafter, between August 30th and November 22nd, Dr. Court purchased directly from Wire over 6000 additional shares of common stock, making a total of 7755 shares, while the remaining shareholders together owned only 2745 shares of common stock. Later, Dr. Court advanced the corporation some $11,000, and settled a pending lawsuit against one of its distributors by purchasing the franchise himself for $10,000. Although the initial subscription was for only $5000, the District Court found that the remainder of Dr. Court's total investment, exceeding $35,000, was made either to increase his control of the company after he had become a director and an officer, or in an attempt to shore up the corporation.

The company functioned from its first corporate meeting in August, 1960, until March, 1961, when it failed. Failure was due primarily to lack of sufficient capital to finance the extensive advertising compaign thought necessary to enable the corporation's product to compete with better known brands.

Dr. Court claimed that his initial contact with Wire was unfavorable, and that he would not have invested in Polytron except for Bray's representations. Bray, according to the plaintiff, told him that Polytron was a growing con-

cern, and that two successful franchises were in operation, concealing the fact that at that time one distributor was being sued on a note for $25,000. Bray was also accused of having falsely led Dr. Court to believe that a high official of the Teamsters Union was interested in becoming a distributor. Defendant denied that he made any false or misleading statements, or that he sought to induce the plaintiff to invest in the corporation. On the contrary, according to defendant, plaintiff was already "sold" on the product, and the subject of the phone conversations was "how big a piece of this company he [Dr. Court] would get for how little money."

The trial court found that all pertinent facts as to the company's condition and prospects were elicited before the shareholders' agreement was executed and before anyone invested in the corporation. Indeed, Dr. Court conceded that no misrepresentations were made concerning the shareholders' agreement. The District Court further found that from the moment the company was formed, Dr. Court, first as treasurer and later as president and the major stockholder, was as active in its affairs as Bray, if not more so, and was thus in a position to be fully informed as to the financial condition of the corporation.

Appellant contends that Bray's role was that of a promoter and, as such, he bore a special fiduciary relation to Dr. Court. By initially misrepresenting the actual status of the business, appellant asserts, Bray breached his fiduciary duty, and became liable not only for the amount invested when the corporation was first formed, but for all of Dr. Court's subsequent losses in connection with the enterprise.

 That promoters of corporations occupy a special fiduciary relation to the shareholders whom they induce to subscribe to stock is unquestioned, but whether or not one is a promoter is a question of fact. Burneagle Coal & Coke Corp. v. Henritze, 139 Va. 422, 124 S.E. 224 (1924). Admittedly, Bray

acted as an attorney in the formation of the corporation, but the trial court found no credible evidence to indicate that he also functioned as promoter. The claims of misrepresentation by Bray to Dr. Court are based solely on unwitnessed telephone conversations between the two men in the period from July 15 to August 3, 1960. In view of the almost total lack of corroboration of Dr. Court's version, and in the face of Bray's emphatic denials, it cannot be said that the trial court was clearly erroneous in concluding that the plaintiff had failed to meet the requisite burden of proof to establish negligence or breach of trust and deceit.

Upon consideration of the entire record, we find no warrant for interference with the District Court's conclusions. The judgment is

Affirmed.