CIRCUIT COURT OF THE CITY OF ROANOKE

Robert L. Alderman et al.

v.

Barbara Ann Damewood

December 23, 1981

By JUDGE JACK B. COULTER

Robert L. Alderman, Carlton Wright, and Duke C. Hales, as Trustees of the Shenandoah Baptist Church and therefore as potential beneficiaries of a certain $10,000 certificate of deposit made by Mr. and Mrs. W. A. Baldridge, have brought this action against Barbara Ann Damewood, the daughter of the Baldridges who are both now deceased. This thirty month certificate, originally dated August 3, 1977, and issued by The Colonial American National Bank, was made payable to "Mr. or Mrs. W. A. Baldridge" and bore the further notation, subsequently made, "POD Sheandoah (sic) Baptist Church." On or about May 12, 1978, it was delivered to the Trustees of the Shenandoah Baptist Church along with a letter from the Baldridges which provided, in substance, that the Baldridges were contributing the principal of said deposit to the church upon the death of both of them. It further advised that the bank had "been notified to make this payment directly to the (church)." By memo dated May 16, 1978, the church acknowledged receipt of this conditional gift. This memo recognized that the certificate remained the property of the Baldridges during their lifetime. It provided:

The deposit remains the sole property of Mr. or Mrs. Baldridge and its principal and

interest may be expended by them at their discretion. Upon the death of Mr. and Mrs. Baldridge the principal of this certificate becomes a gift to the Shenandoah Baptist Church. . . .

Mr. Baldridge died on March 20, 1979. Thereafter, on June 5, 1979, Mrs. Baldridge gave her daughter, Mrs. Damewood, a general power of attorney. Sometime around December 21, 1979, shortly before her mother's death on January 3, 1980, Mrs. Damewood, allegedly acting under this power of attorney, requested the bank to redeem the subject certificate of deposit, claiming that it had been lost or destroyed. Upon receiving a lost certificate affidavit and bond, the bank honored the request and paid the $10,000 and $87.26 in interest to Mrs. Damewood before her mother's death.

Thereafter, on or about February 4, 1980, that being the approximate maturity date of the certificate, the church presented it to the bank for redemption. Payment was refused, however, because the bank had already honored the certificate pursuant to Mrs. Damewood's affidavit, bond and power of attorney.

The church first initiated this action by filing a motion for judgment on July 23, 1980, against Mrs. Damewood and the Colonial American National Bank seeking judgment for $10,000 on the apparent basis of the bank's refusal to redeem the original certificate when it had been presented for payment on February 4, 1980. The motion vaguely suggests some ill-defined impropriety on the part of Mrs. Damewood in requesting and apparently receiving payment of said certificate on or about December 21, 1979, pursuant to the power of attorney from Mrs. Baldridge and the lost certificate, affidavit, and bond.

On August 6, 1980, Mrs. Damewood filed a Special Plea, Demurrer and Grounds of Defense, and the defendant bank filed its Grounds of Defense on August 15, 1980. Thereafter, after preliminary exchanges of requests for admissions and other discovery maneuvers, the plaintiffs on December 2, 1980, filed a motion to

transfer the case from the law to the equity side of the court pursuant to § 8.01-270. They also sought and were granted permission, over Mrs. Damewood's objections, to amend their motion for judgment by filing a bill of complaint in its place.

The bill of complaint was filed on December 9, 1980. The first six paragraphs of this bill paralleled the first six paragraphs of the motion for judgment with only editorial elaboration. Paragraph (7) of the bill of complaint, however, added the following charge:

(7) That Damewood did not in fact have power or authority from Nannie Rose Baldridge or from W. A. Baldridge on December 21, 1979, or at any other time, to collect the proceeds from the time certificate deposit at Colonial American National Bank and in fact, acted contrary to express instructions from Nannie Rose Baldridge.

The bill of complaint, then, after reciting the death of Mrs. Baldridge (Paragraph 8) and the refusal of the bank to redeem the certificate when the church presented it (Paragraph 9), set froth a separate heading entitled "Count 1 Constructive Trust." Under said heading in an apparent effort to particularize their claim or assert a new one the plaintiffs charged that Mrs. Damewood, finding Mrs. Baldridge "in a weakened condition and infirm from age," took advantage of her condition and procured a general power of attorney, "only after coercion, undue influence, duress and pressure" (Paragraphs 10-13). Further, the plaintiffs urged in Paragraph 14 that "Damewood . . . acting expressly contrary to the instructions of Mrs. Baldridge, withdrew the principal of the certificate of deposit. . ." The bill concludes with the prayer that a constructive trust be imposed upon the proceeds of the said certificate "which was destined for and should have gone to the plaintiff" or, in the alternative, grant judgment in the amount of $10,000.

On December 12, 1980, the plaintiffs filed their

motion to non-suit the bank, which was granted by order entered on February 24, 1981.

Mrs. Damewood renewed her Special Plea and Demurrer to the bill of complaint by pleadings filed on December 29, 1980. After a hearing on February 4, 1981, the Court overruled Mrs. Damewood's Special Plea and Demurrer by order entered on March 12, 1981. Thereafter, on March 25, 1981, Mrs. Damewood filed her answer to the bill of complaint and a motion seeking an issue out of chancery. In said motion Mrs. Damewood represented:

> 1. The bill of complaint herein filed alleges, among other things, that although your defendant's mother was in a weakened condition and inform from age, your defendant, by the exercise of coercion, undue influence, duress and pressure procured a power of attorney from her mother, and then fraudulently or improperly acted contrary to her mother's directions, and contrary to or outside of the ambit of the power of attorney so allegedly obtained, in cashing in a bank certificate, and receiving the proceeds therefrom. (emphasis added)

After further exchanges of interrogatories, requests for admissions and documents and responses thereto, the plaintiffs on May 14, 1981, filed a motion to compel discovery asking the Court to require the defendant to answer questions No. 9, 10, 11 and 12 of their first set of interrogatories. These specific questions sought, in summary, a detailed accounting of the $10,000 received by Mrs. Damewood from the subject certificate of deposit and her accounting as Administratrix of the Estate of Nannie Rose Baldridge as well, including the identification of any gifts received by Mrs. Damewood from her mother in 1979 or 1980. The plaintiffs also requested the production of documents, including check records and inventory of Mrs. Baldridge's estate, in further effort to document this theme. On May 20, 1981, the defendant filed her objection to furnishing these documents and information

and filed a motion in limine to rule inadmissible any out-of-court statements allegedly made to declarants by Nannie Rose Baldridge, upon which the plaintiffs had indicated they would be relying.

These motions were argued before the Court on June 22, 1981, and thereafter the Court requested briefs from counsel, which were submitted during the summer of 1981 as follows:

(1) Memorandum of the plaintiffs dated July 6, 1981.

(2) Memorandum of the defendant filed August 13, 1981.

(3) Supplemental and reply memorandum dated August 26, 1981, from the plaintiffs.

After reviewing these memoranda, the Court requested an evidentiary hearing to determine the precise out-of-court statements to which the motion in limine was addressed. This hearing was held on October 5, 1981.

Thereafter, the plaintiffs, over the defendant's objection, were granted leave to file an amended bill of complaint, the order granting this being entered on October 13, 1981. The amended bill was thereupon filed. On October 20, 1981, the defendant filed a plea of the Statute of Limitations.

In the course of the arguments over the defendant's motion in limine to disallow the hearsay evidence proposed by the plaintiffs, the Court suggested the possibility that the Dead Man's Statute (§ 8.01-397) might be applicable. Both sides disagreed but the Court urged reconsideration. Thereafter, by letter dated October 13, 1981, the plaintiffs renewed their position that the Dead Man's Statute was inapplicable, repeating the view expressed in their reply memorandum of August 26, 1981 (see page 8 thereof). The defendant's counsel replied by letter dated October 20, 1981, accepting the plaintiff's position and, in effect, reasserting the argument advanced in the defendant's memorandum of August 13, 1981 (see page 16

thereof). The plaintiffs, however, reversed their position by subsequent letter dated November 18, 1981, now claiming that the Dead Man's Statute "does apparently apply." In this same letter the plaintiffs submitted their argument in opposition to the defendant's Plea of the Statute of Limitations. Thereafter, on December 9, 1981, the defendant filed her Memorandum in Support of said plea.

## THE STATUTE OF LIMITATIONS

The defendant urges that the plaintiffs' twice-amended claim should be barred because, as it sounds in fraud, the one-year statute of limitations applies. The actions complained of, the defendant points out, took place in June 1979, when the power of attorney was executed, and December 1979, when pursuant to said power, the certificate of deposit was redeemed; or, at the latest, in February 1980, when the church first learned that the certificate of deposit had been cashed by another. Since the amended bill was not filed until October 9, 1981, well over a year beyond the expiration of any one-year period, and since an amended pleading which sets forth a new claim cannot relate back to the date of the original filing, which was July 23, 1980, therefore, the defendant argues, the plaintiffs' claim is barred.

The first issue presented by this plea of limitations, however, is not when the cause of action first accrued or whether or not there can be any relating back, but the determination of which limitation applies. The defendant contends that the plaintiffs' claim should be governed by § 8.01-248 of the Virginia Code which traditionally covers the tort of fraud, it being conceived to be more of a "personal action"; that is, an action which does not survive the death of either party to the tort. Claims for "personal injuries," as distinguished from "personal actions" are governed by the first part of § 8.01-243(A):

A. Unless otherwise provided by statute, every action for personal injuries, whatever the theory of recovery, except as provided

in B hereof, shall be brought within two years next after the cause of action shall have accrued.

The instant suit is clearly not a claim for personal injuries, but is it an action for injury to property, which would be controlled by § 8.01-243(B); a suit on a contract, addressed by § 8.01-246; or does the catch-all section, § 8.01-248, govern?

§ 8.01-243(B) provides:

B. Every action for injury to property, . . . shall be brought within five years next after the cause of action shall have accrued.

§ 8.01-246, the limitations on personal actions based on contracts, provides:

Subject to the provisions of § 8.01-243 regarding injuries to person and property and of § 8.01-245 regarding the application of limitations to fiduciaries, and their bonds, actions founded upon a contract, . . . shall be brought within the following number of years next after the cause of action shall have accrued . . . .

2. In actions on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby, or by his agent, within five years whether such writing be under seal or not; . . . .

4. In actions upon any unwritten contract, express or implied, within three years.

The catch-all section, § 8.01-248, provides:

Every personal action, for which no limitation is otherwise prescribed, shall be brought within one year after the right to bring such action has accrued.

It is well to remember in analyzing this issue that we are to look to substance more than form. As noted in 12A M.J., Limitations of Actions, § 2, p. 216:

> Under Virginia law, it is the object of litigation which determines the applicability of a statute of limitations, not the form in which suit is instituted.

Furthermore, the burden of proof is on the party pleading the statute. See Burks Pleading and Practice, 4th Ed., p. 429.

Though the plaintiffs have couched their claim in the language of fraud, undue influence and coercion, they have also included the suggestion that the defendant breached her fiduciary duties and otherwise exceeded her authority under the general power of attorney granted to her by her mother. This is, in essence, the major thrust of the plaintiffs' claim, although it is unduly subordinated in their pleadings. The plaintiffs do not seek unspecified damages in the classical sense usually associated with fraud and deceit cases; they address their claim to specific property, as the potential third-party beneficiaries of a contract, as it were, between the Baldridges and the bank, the contract being represented by a specific certificate of deposit and associated correspondence.

Judge Dalton, in applying the two-year statute of limitations called for under Virginia's blue sky laws, rather than either the one or five year periods contained in the Virginia statutes relating to non-surviving and surviving fraud actions, cogently observed in Maine v. Leonard, 353 F. Supp. 968 (W.D. Va. 1973):

> In Virginia there has been a split of opinion as to which limitation period applies in fraud actions.

What he meant was, as an analysis of the cases demonstrates, that there are some cases of fraud which are personal and do not survive and there are others in

which property rights are the key issue and they do survive.

A reading of the statute which preceded the current ones and from which they were derived tends to clarify the problem. § 5818 of the Code of 1919 provided:

> Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued. (emphasis added)

This became a part of § 8-24 of the Code of 1950 from which both the present § 8.01-243 and § 8.01-248 developed. Hence, whether the one or five year statute applies turns on whether the action survives the death of a party. Whether or not an action survives depends upon the nature of the action.

In Winston v. Gordon, 115 Va. 899 (1914), a suit involving an alleged breach of duty of the directors of an insolvent bank, the Court carefully analyzed the history of the survival or non-survival of actions. Because of the depth of treatment given the subject in this frequently-cited case, reference to the basic principles set forth therein should provide helpful guidelines to the case at bar. The Court quotes Professor Graves in his work on Pleadings at page 915 as follows:

> Then what tort actions are assignable? The answer is such only as survive to or against the personal representative, if one of the original parties dies. Then what tort actions survive? The answer is: Those for wrong to property, real or personal, or which grow

out of breach of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract. . . (emphasis added)

Further, the Court in emphasizing Graves's analysis observed at page 917:

The statements of Mr. Graves must always be borne in mind that actions are assignable which survive, and that those which do not survive are not assignable.

At page 1626 of White & Tudor's Leading Cases in Equity, supra, it is said: "All choses in action embracing demands which are considered as matters of property or estate are now assignable either at law or in equity. Nothing is excluded but mere personal torts, which die with the party. A claim, therefore, for property fraudulently or tortiously taken or received, or wrongfully withheld, and even for an injury to either real or personal property, may be assigned . . . (emphasis added)

Even further in the in-depth analysis presented by this case, the Court goes on at page 918:

In Lee's Admr. v. Hill, 87 Va. 497, 12 S.E. 1052, 24 Am. St. Rep. 666, this court said "that where a cause of action is founded in tort, unconnected with contract, and affects the person only, and not the estate, the action dies with the person; but where the action is founded on contract, although nominally laid in tort, the action survives."

And further at page 918:

In 1 Cyc., page 49, the law upon the subject is well summarized as follows: "At common law, as a general rule, the qualities of assignability and survival are tests each of

the other and are convertible terms. The question whether an action survives depends on the nature of the action and not upon the form of it. It has been held that the line of demarcation at common law, separating those actions which survive from those which do not, is that in the first the wrong complained of affects primarily and principally property and property rights, and the injuries to the person are merely incidental, while in the latter the injury complained of is to the person, and the property and rights of property affected are merely incidental . . . " (emphasis added)

There are numerous cases in Virginia attempting to draw this line of demarcation and applying the principles stated in Winston. These cases include Worrie v. Boze, 198 Va. 533 (1956); Progressive Realty Corp. v. Meador, 197 Va. 807 (1956); Westover Court Corporation v. Eley, 185 Va. 718 (1946); Vance v. Maytag Sales Corp., 159 Va. 373 (1932); Cover v. Critcher, 143 Va. 357 (1925). See also Watson v. Daniel, 165 Va. 564 (1936), in which apparently all the Virginia cases up to that time are analyzed, the summary of Trust Company v. Fletcher, 152 Va. 868, at page 571, being particularly significant:

In Trust Company v. Fletcher, supra, the plaintiff brought his action to recover as damages the purchase price paid by him to the defendant for certain worthless stock. The defendant contended that the one year statute of limitation applied, while the plaintiff contended that the five year statute applied. This court held that under Section 5385 of the Code, the cause of action would survive and therefore applied the five year statute. It also held that the conduct complained of, that is, the fraudulent obtaining of the plaintiff's money for the worthless stock, was a direct injury to the plaintiff's property; that by the fraud of the defendant the plaintiff was deprived

of the possession of his property, and the specific property of the plaintiff was taken and appropriated to defendant's use.

Further, see 2 Harrison on Wills and Administration, 2nd Ed., § 434, where the rule is stated:

Those actions survive which consist of injuries to property, real and personal, or grow out of breach of contract. All actions, therefore, for injury to character or the person die with the death of either party. Actions for libel and slander or malicious prosecution, assault and battery, and actions of like character die with the person injured.

And so, in the case at bar, we cannot by simply saying, as perhaps we could for libel and slander or malicious prosecution, the plaintiff's claim is grounded on fraud, which is personal, and ergo the one year statute applies. This is a claim--in equity--by trustees of a church (a non-personal entity) alleging that they have been deprived of the gift of a specific item of property, to-wit, a certificate of deposit which was in their possession, by the breach of the fiduciary duties of the donor's agent in using the funds of that certificate for the personal use of that agent. Because the right to the property at issue would come into existence, if at all, only upon the death of the donors, it is almost by definition an action that survives. It not only survives death, it comes into existence only upon death.

No right of Mrs. Baldridge or injury to her person, character or reputation is being asserted; nor is any injury to the person, character or reputation of the plaintiff church or its trustees at issue. The claim is to certain of Mrs. Baldridge's property that the plaintiffs contend has been wrongfully diverted through an agent's misuse of delegated powers. The wrong complained of affects primarily and principally property and property rights. The five year statute,

therefore, should apply. The plea of the one year statute of limitations is accordingly overruled.

Having so decided, it is unnecessary to consider whether any claim of fraud was included in the original motion for judgment or the first bill of complaint which took its place; nor when the "fraud" was first discovered or reasonably discoverable.

Decision on the defendant's motion in limine and the applicability of the Dead Man's statute will be deferred until the time of trial.

## THE MOTION TO COMPEL DISCOVERY

The plaintiffs are claiming, as the defendant's motion for an issue out of chancery so succinctly summarized, that Mrs. Damewood ". . . improperly acted contrary to her mother's directions, and contrary to or outside of the ambit of the power of attorney . . . in cashing in (the) bank certificate . . . ." In order to establish this claim, the plaintiffs should be entitled to develop, if they can, how those funds were, in fact, used. Hence, the substance of the contested interrogatories and motion for the production of documents should be granted.