**WLR FOODS, INC., Plaintiff,**

v.

**TYSON FOODS, INC., Defendant.**

Civ. A. No. 94–0012–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

April 25, 1994.

Douglas L. Guynn, Wharton, Aldhizer & Weaver, Harrisonburg, VA, William R. Norfolk, Sullivan & Cromwell, New York City, for plaintiff.

Thomas Spahn, Thomas F. Farrell, II, McGuire, Woods, Battle & Boothe, Richmond, VA, James R. Sipe, Harrisonburg, VA, Russell E. Brooks, Milbank, Tweed, Hadley & McCloy, New York City, for defendant.

## MEMORANDUM OPINION

CRIGLER, United States Magistrate Judge.

This action was commenced by WLR Foods, Inc. (WLR) seeking a declaration by the court that the actions it took under the Virginia Control Share Acquisition Act and the Virginia Affiliated Transaction Statute are constitutional and that a rights plan adopted by the directors of the company is valid. At that time, the defendant, Tyson Foods, Inc. (Tyson), was making an attempt to acquire WLR under the Virginia Stock Corporation Act.

Tyson answered plaintiff's complaint and has filed both an original and an amended counterclaim (counterclaim) based upon what Tyson believes were actions taken by the WLR directors to prevent a fair and timely referendum by disinterested WLR shareholders on the proposed purchase of the company by Tyson. The counterclaim asserts that the Virginia Affiliated Transaction statute and the Virginia Control Share Acquisitions Act violate the Constitution of the United States. Tyson also alleges that such statutes are in conflict with and are preempted by federal securities laws, which Tyson believes were designed to facilitate acquisitions such as the one Tyson proposed. Tyson further alleges violations of state law duties by the counterclaim defendants, which include the directors of WLR, in relation to certain actions taken under the Control Share Acquisition Act and the Affiliated Transaction statute. Lastly, Tyson claims that counterclaim defendants failed to produce records as required by Virginia law, and that the directors breached their fiduciary duties. As a result, Tyson claims injury, and it seeks expeditious declaratory and injunctive relief from the court.

Currently the case is before the court on the March 24, 1994 motion of the defendant to reconsider the court's Order of March 16, 1994 protecting from discovery the content of advice given to WLR Foods, Inc. by its financial and legal advisors.[1] Defendant complains that those provisions of the court's Order of March 16, 1994 barring access to WLR corporate documents and testimony concerning the advice it received are contrary to well established precedent involving the business judgment rule, and that the order runs counter to the liberal discovery that is envisioned by the Federal Rules of Civil Procedure.[2] Plaintiff opposes the motion. On April 15, 1994, the parties presented argument before the court, following

---

1. By the same pleading, Tyson has objected to the court's order. The court perceives such to be an attempt to preserve the issue for appeal to the presiding District Judge.

2. In its brief in support of the motion to reconsider, Tyson seeks to salve the court's concerns about standing and justiciability. Concerns over those issues continue to nag the court, but they will await a later day for resolution.

which, the court announced its decision from the bench. This memorandum further memorializes the opinion of the court, and in it the court will address Tyson's complaints and concerns in the reverse order presented by its brief.

## SCOPE OF DISCOVERY

■■■ It cannot be disputed that parties are entitled to discover from each other "any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Fed.R.Civ.P. 26(b)(1). Furthermore, the evidence subject to discovery "need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Id. Therefore, the duty of the court is to determine the substance both of the claims or defenses that are presented in a case and of the evidence sought to be developed so that it can ascertain the relevance of that evidence. If relevant, it becomes discoverable irrespective of its admissibility so long as there is a likelihood that it will lead to admissible evidence. Similarly, should the information be discoverable, but nonetheless sensitive or confidential, the court can fashion an order protecting the it from dissemination beyond that which is necessary to permit a meaningful preparation of the case. Fed.R.Civ.P. 26(c).

Defendant seems to concede, and wisely so, that the relevance of the discovery here in issue is to be judged by the substantive state law claims set forth in its counterclaim. To put it another way, the information sought, namely the substance of advice given by legal and financial advisors, is not probative of any of the federal questions raised by Tyson in its challenge to the Virginia statutes on constitutional and preemption grounds. Therefore, it is in this light that the court reconsiders its decision of March 14, 1994 as embodied in the Order of March 16, 1994, and to this extent the defendant's motion to reconsider will be granted.

## APPLICABLE VIRGINIA LAW

■■■ Tyson asserts entitlement to the information on two grounds. First, it believes the evidence is relevant because it has raised a question of director conflict as an element of its state law claims that the directors breached applicable standards of conduct as well as violated their fiduciary duties. Tyson seeks to persuade the court that by alleging direct and indirect conflicts of interest, existing if for no other reason than by virtue of the takeover attempt, Tyson has made legal and financial advice relevant to the case.[3] The court has difficulty with this logic and sees Tyson as attempting to accomplish by the back door that which is closed to it by the front door.

The scope of Virginia's director conflict law was narrowed from that previously provided under Va.Code 13.1–39.1 (§ 13.1–39.1) when the General Assembly enacted Va.Code § 13.1–691 (§ 13.1–691). Under § 13.1–691, transactions in which a director has an interest (conflict of interests transactions) are not void, only voidable, a marked change from the previous which rendered them void. Furthermore, a transaction in which a director has a direct or indirect interest is not voidable under § 13.1–691 if: 1) the material facts surrounding the transaction are **disclosed,** and the transaction is **approved or ratified by either the board or the shareholders;** or 2) the transaction is **fair** to the corporation. Irrespective of who carries the initial burden of proof and when during the course of litigation it might shift, the bottom line is that none of the elements of a director conflict claim or defense involves the need for knowing the substance of advice given the director before or during a transaction. Such advice is not probative of what the conflict was, whether there was disclosure of the conflict, whether the board or shareholders adopted or ratified the directors action despite the known conflict or whether the transaction was fair to the corporation. All evidence relevant to the existence of a conflict and to whether it was disclosed, approved or ratified should appear in the documentary or testimonial history of the transaction. Furthermore, the advice provided by legal and financial consultants is not probative of how fair the director's action was to

---

**3.** Tyson does not set forth its allegations of conflict of interest as a separate claim under § 13.1– 691. They are interwoven in its other state law causes of action.

the corporation, as fairness must be established irrespective of advice sought or given. Therefore, simply by raising the specter of director conflict, Tyson has not made relevant the substance of any advice given to a director.

■ Second, Tyson challenges the court's use of Va.Code § 13.1–690 (§ 13.1–690) in any determination of whether the information sought is discoverable. It argues that this section merely establishes the standard by which a director's conduct is measured, absent director conflict, and it suggests that the court need not determine the appropriate legal standard for assessing the propriety of directors' conduct before determining the scope of the information relating to that conduct that must be revealed during discovery. In many respects this is a "discover now—argue later" approach to the problem. By the same token, Tyson argues that under the traditional statutory or common law business judgment rules, the information sought is relevant to assessing the propriety of director conduct, and it would be entitled to discover the evidence it seeks here.

Plaintiff asks the court to focus on the true nature of Tyson's counterclaim, which it sees as nothing more than a challenge to the propriety of director conduct under extant Virginia law. Therefore, it argues that the current Virginia standard establishing directors' duties and fixing liability for a violation of those duties must be applied. Moreover, WLR believes that the current statutory scheme is radically different from the common law and model code versions of the business judgment rule, making it virtually unique in the country. Plaintiff further believes that Virginia's business judgment rule, now codified in § 13.1–690, is process-oriented, thus permitting discovery only of the process by which the directors made their

decisions, but not allowing an inquiry into the substance of the information produced during that process.

As Tyson argues, the traditional business judgment rule is represented by cases like *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del.1985), which heretofore has been acknowledged in this District as an appropriate standard. *C–T of Virginia, Inc. v. Barrett*, 124 B.R. 689 (W.D.Va.1990). This court cannot help but observe, however, that *C–T of Virginia* was decided under Virginia law predating the enactment of § 13.1–690, and it believes, as WLR suggests, that § 13.1–690 was a radical departure from the former common law and statutory business judgment standards.[4] Clearly the court in *C–T of Virginia* was correct to the extent it adopted a business judgment rule similar to that in *Unocal*, but because its operative facts predated the change of the statute, *C–T of Virginia* is of little precedential authority on the issue here presented.

■ The court concurs with WLR's observations that § 13.1–690 is process-oriented in that it permits inquiry into the process by which the decision was made rather than the substance of the information processed by the director in making the business decision. To that extent, the court rejects Tyson's argument that traditional business judgment rule jurisprudence, as represented by such cases as *Unocal* and *C–T of Virginia*, applies in this case so as to permit Tyson to inquire about the substance of the advice received by a director from the sources mentioned in the statute.[5] The question is not what some person external to the transaction, and looking at it with perfect hindsight, might believe to have been an exercise of reasonably good or bad judgment based on the substance of advice given.

---

**4.** Tyson has submitted materials filed in the Eastern District of Virginia during the discovery phase of *Sandberg v. Virginia Bankshares, Inc.*, 891 F.2d 1112 (4th Cir.1989), *rev'd on other grounds*, 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). It is clear from reading those papers that the issues struck here regarding effects of the statutory changes on the scope of discovery were never broached by the parties or the trial court in *Sandberg*. They certainly were not the subject of appeal.

**5.** The instant motion addresses legal and financial consultants, but the statute also covers knowledge or information received from officers and employees believed by the director to be reliable and competent as well as "'other persons" giving advice within their professional or expert competence.

Rather, "good faith" under the statute presents the question whether a *process* was engaged that would produce a defensible business decision. The procedural soundness of a business decision may be assessed by examining the qualifications of the persons with whom the director consulted, the *general topics,* not the substance, of the information sought or imparted and, in this court's view even whether the advice was followed.[6]

For these reasons, and those set forth from the bench on April 15, 1994 which also hereby are incorporated, an order will enter granting Tyson's motion to reconsider but denying its substantive request to amend or alter the court's Order entered on March 16, 1994, except to the extent that this opinion clarifies any ambiguity in the March 16, 1994 Order concerning the scope of discovery under Va.Code §§ 13.1–690 and 13.1–691.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

---

**6.** Tyson is concerned that this approach unduly restricts it from developing evidence to test the veracity of the WLR directors. The court believes Tyson's quarrel should be with the General Assembly of Virginia which has, in its wisdom, enacted what very well might be "a unique statute nationally". 20 Univ.Rich L.Rev. 67, 106 (1985).